PLAINS RADIO BROADCASTING CO. v. FEDERAL COMMUNICATIONS COMMISSION (LUBBOCK COUNTY BROADCASTING CO., Intervenor).

No. 9973.

United States Court of Appeals District of Columbia Circuit.

Argued Feb. 7, 1949.

Decided May 4, 1949.

---

Mr. Dwight E. Rorer, Washington, D. C., with whom Messrs. Clair L. Stout and Fred W. Albertson, Washington, D. C., were on the brief for appellant.

Mr. Max Goldman, Acting Assistant General Counsel, Federal Communications Commission, Washington, D. C., with whom Mr. Benedict P. Cottone, General counsel, and Messrs. Richard A. Solomon, Washington, D. C., and John D. Edgerton, Counsel, Federal Communications Commission, Washington, D. C., were on the brief, for appellee.

Mr. Harold E. Mott, Washington, D. C., with whom Mr. Robert L. Heald, Washington, D. C., was on the brief, for intervenor. Mr. Norman B. Frost, Washington, D. C., also entered an appearance for intervenor.

Before WILBUR K. MILLER, PRETTYMAN, and PROCTOR, Circuit Judges.

PRETTYMAN, Circuit Judge.

Appellant and intervenor filed mutually exclusive applications for construction permits for a radio station at Lubbock, Texas. The applications were consolidated for a comparative hearing and decision. The Commission granted intervenor a permit, upon a condition.

In Johnston Broadcasting Co. v. Federal Communications Comm'n, 175 F.2d 351 and Easton Publishing Co. v. Federal Communications Comm'n, 175 F.2d 344 decided today, we have stated the essentials to valid conclusions in radio cases which involve comparative determinations. We need not repeat those requirements here.

Principally, appellant Plains Radio Broadcasting Company (which we shall hereinafter call "Plains") says that the decision of the Commission is invalid as arbitrary, without sufficient findings, and without substantial evidence in support, in these respects: (1) The Commission gran-

ted intervenor a permit for a station with 5 kw. power, whereas that application was for a 1 kw. station only and all intervenor's evidence related to the less powerful operation and none to the greater. (2) The Commission evaluated intervenor's program proposal as superior to that of appellant, although, in fact, 62½ per cent of intervenor's proposal was impossible of accomplishment, as the Commission knew and recognized. (3) The Commission weighed against appellant the fact that it owned and operated a newspaper in Lubbock, an illegal discrimination and also one imposed without comparative consideration with intervenor. (4) The Commission gave weight against appellant to an alleged overlap, contrary to its established rules on that subject and without notice of its intention to consider that feature of appellant's operation.

Intervenor Lubbock County Broadcasting Company (which we shall refer to hereinafter as "Lubbock") applied for a permit for a station of 1 kw. power. The notice of hearing specifying the issues, referred to its "proposed station". Its evidence related to construction and operation at 1 kw. The Commission, after considering the area and the engineering technicalities involved, determined that in the public interest a grant should be made for 5 kw. operation in daytime and 1 kw. at night. It awarded the permit to Lubbock, but upon condition that the permittee file an application for "modification of permit" specifying 5 kw. daytime power.

■ Appellant says that the Commission is confined by the statute [1] and its Regulations [2] to consideration of the application as made out, either originally or upon amendment, by the applicant; that it could not find Lubbock qualified to construct and operate at 5 kw. upon evidence which related solely to a station of 1 kw. power; and that it could not decide issues not framed or heard. Generally speaking, we agree with those contentions. But the Commission contends that it is not so rigidly confined as appellant urges, that

these are not "inflexible limitations", and that the Commission can grant facilities which are "reasonably related" to those requested. With that contention we agree, if "reasonably related" be understood to mean within the ambit of the issues and the evidence.[3]

Our difficulty is that we cannot tell from anything brought to our attention in this record whether operation at 1 kw. is reasonably related to operation at 5 kw. Neither evidence nor findings shed any light upon that problem, so far as we can ascertain. Lubbock directed its evidence to 1 kw. operation. Plains directed its to 5 kw. The Commission did not make the award to Lubbock on its original application but required it to file a post-decision amendment, apparently reflecting the thought that the grant did not fall within the scope of the terms of the application as filed and heard. We are struck by the difference between the estimated costs of construction of the two applicants. Lubbock estimated the cost of its entire new station, including land, to be $36,300. Appellant Plains estimated the cost of enlarging its present station to be $144,400. Whether this disparity has any relation to the fact that Lubbock's proposed station was 1 kw. power whereas Plains's improved station was to be 5 kw. power, we do not know.

We do not think that we can guess on this point. If the Commission's authority is restricted, as it says, to facilities "reasonably related" to those applied for, it should make findings to bring its conclusion within its authority. And it must receive evidence upon which to base those findings.

■ We are not impressed by the Commission's argument that Plains is thwarted by its own inconsistency, in that its application was for 5 kw. operation day and night whereas the grant is to be for only 1 kw. at night. It may well be that 1 kw. operation for part of the time on a 5 kw. station is a reasonable relation-

---

[1] Secs. 308 and 319, Communications Act of 1934, 48 Stat. 1084, 1089, 47 U.S. C.A. §§ 308, 319.

[2] Sec. 1.304 of the Commission's Rules and Regulations.

[3] Cf. State Airlines v. Civil Aeronautics Board, 174 F.2d 510.

ship, whereas a 5 kw. operation on a 1 kw. station is an impossibility. We know no more on that proposition than we know on the one first above-discussed, as there are no evidence and no findings. It is, however, common knowledge that electrical devices operate reasonably enough at less than capacity but do not, and cannot, operate at more than capacity. Thus, evidence of costs and ability to operate at 5 kw. might well cover part-time operation at 1 kw., whereas costs and capacity of a 1 kw. station might be immaterial to a 5 kw. operation.

The second point concerns the evaluation of the proposed programs. The Commission has contended in this court, and has been sustained in the contention,[4] that in a comparative determination the relative merits of program proposals are an important, if not vital, feature of measurement in the public interest. In the case at bar, the Commission found as a fact that Lubbock's "program proposal is based upon a Mutual Broadcasting System affiliation." Upon that basis, it found the percentages of time which would be devoted to the various sorts of broadcasts—commercial, network and local live talent; and the types of programs —entertainment, educational, religious, etc.

In the oral argument before it and again upon the petition for rehearing, the Commission's attention was drawn to the fact that an affiliation between Lubbock and the Mutual System was most unlikely, because Mutual had signed a contract with another station in the town of Lubbock. In its Memorandum Opinion and Order upon the rehearing, the Commission said:

"At the time of the hearing, Lubbock proposed an affiliation with Mutual Broadcasting System, and based its program plans on such an affiliation. Despite the fact that this network now has an affiliation with Station KCBD in Lubbock, and that an affiliation with Lubbock would probably not be made, we believe that the information which the record contains with respect to the type of programming this applicant proposes, indicates that it will present a well rounded and balanced program service. As indicated above, our determination of which of two competing applicants for the same city is to be preferred is based upon a determination of which applicant would better serve the public interest. The comparison of the program proposals is an important criterion upon which we base this determination. However, there are other criteria which we consider in making a selection between such applicants. We have considered the program proposals of the applicants herein together with the other criteria upon which we base our decisions, and for the reasons stated in our Decision have determined that a grant to Lubbock would better serve the public interest. Therefore, we believe that this allegation is without merit."

That summation of the Commission's position on program proposals leaves us uninformed as to the facts upon which this portion of the conclusion rested. According to the Commission's finding, the proposal made by Lubbock was "based upon" a Mutual network contract. The final decision of the Commission recites the improbability of such contract and rests upon "the type of programming" proposed and the probability that the applicant will present "a well rounded and balanced program service." We are not told by any findings what type of program Lubbock proposes, absent the Mutual network affiliation. Moreover, this is a comparative consideration, and the question is not whether the applicant will present a well-rounded program but whether its proposals will better serve the public interest than will those of another applicant. How can a conclusion be reached as to which proposal is better, if the nature of one of them is not known? Perhaps a mere finding that an applicant will present a well-rounded program would suffice, if the decision related merely to the bare qualification of the applicant for a license. But that is not the inquiry here. The Commission is making a comparison, and it says, correctly, that the comparison of

---

[4] Johnston Broadcasting Co. v. Federal Communications Com., supra.

the program proposals is an important criterion in that determination. Then, we think, it must make findings upon what the program proposals are. And it must receive evidence upon which to base those findings.

The third point relates to the weight given, against appellant, to the fact that it owns the only newspaper in the town of Lubbock. In its final Memorandum Opinion and Order, the Commission said:

"The Decision clearly shows that petitioner was not disqualified because of newspaper ownership, but that this fact along with others going to the comparative qualifications of the appplicants was taken into consideration. In this proceeding we determined, in part, only that it would be more in the public interest to provide an additional medium for the dissemination of news and information to the public that would be independent of and afford a degree of competition to other such media in the area."

As the Commission correctly says, this is a comparative consideration. But, so far as we can tell, on this matter of media for the dissemination of news, it gave weight only to the fact that this appellant owned the newspaper in Lubbock. The evidence and the findings indicate that there are facts pertaining to the successful intervenor which bear upon the concentration of media for the dissemination of news. Intervenor is a partnership of three partners, with 43¾, 43¾ and 12½ per cent interests, respectively. One partner owns half of a radio station at Brownwood, Texas, and 20 per cent of stations at Waco and Austin. The second principal partner owns 90 per cent of the newspaper in Brownwood, Texas, has interests in newspapers in Del Rio and Lamesa, Texas, and owns the other half of the Brownwood radio station and another 25 per cent of the Waco and Austin stations.

It seems to us that in considering the public interest in the maintenance of competition in the dissemination of news, the Commission cannot select the one fact that one applicant is the owner of the town's only newspaper and ignore the fact that the other applicant is directly related to several newspapers and radio stations in the same general section of the country (although not in this immediate community). A concentration of news dissemination by a chain of stations over an area would seem to us to be a factor in a comparative evaluation from the standpoint of competition in news dissemination. We think that the Commission must weigh pro and con the facts as to each applicant upon the subject which it deems material in a comparative evaluation. It cannot select and assert as material the pertinent characteristics of one applicant and ignore the related features of the others.

The fourth point concerns the overlap. The Commission premised its decision in part upon the fact that about 74 per cent of the increased service area sought by appellant Plains is already served by another station, located in another city, owned by it (Plains). The Commission was of opinion that, comparatively speaking, it would be more in the public interest for the two services in this area to be competitive. Appellant argues that overlap is not a legal bar to a license. That is quite correct. But we are not here considering bars to licenses; the case is a comparative consideration of two applicants, both qualified. We think that competition in service is a feature which may be considered by the Commission, among other factors, in reaching a choice between applicants.

For the reasons outlined, the case must be

Reversed and remanded for further proceedings in accordance with this opinion.