**SCRIPPS–HOWARD RADIO, Inc. v. FEDERAL COMMUNICATIONS COMMISSION et al.**

No. 10574.

United States Court of Appeals District of Columbia Circuit.

Argued March 21, 1951.

Decided May 10, 1951.

678

Mr. Raymond T. Jackson, Cleveland, Ohio, pro hac vice, by special leave of Ohio, pro hav cive, by special leave of Court, with whom (Messrs. George S. Smith and Harry P. Warner, Washington, D. C., were on the brief, for appellant.

Mr. Daniel R. Ohlbaum, Attorney, Federal Communications Commission, of the Bar of the Court of Appeals of New York, pro hac vice, by special leave of Court, with whom Messrs. Benedict P. Cottone, General Counsel, Max Goldman, Asst. General Counsel, and Richard A. Solomon, Attorney, Federal Communications Commission, Washington, D. C. were on the brief, for appellee.

Mr. Harold N. McLaughlin, Cleveland, Ohio, of the Bar of the Supreme Court of

Ohio, pro hac vice, by special leave of Court, with whom Mr. Frank Roberson, Washington, D. C., was on the brief, for intervenor.

Before WILBUR K. MILLER, FAHY and WASHINGTON, Circuit Judges.

FAHY, Circuit Judge.

Scripps-Howard Radio, Inc., appellant, seeks reversal of an order of the Federal Communications Commission granting an application of Cleveland Broadcasting Incorporated, referred to as the Cleveland Company, and denying its own, for a permit to construct a standard AM broadcasting station at Cleveland, Ohio. The two applications, being mutually exclusive, were the subject of a consolidated hearing. See Ashbacker Radio Corp. v. Federal Communications Commission, 1945, 326 U. S. 327, 66 S.Ct. 148, 90 L.Ed. 108.

Appellant states the Commission is required in such a situation to determine which of the applicants will provide the better, more comprehensive and assured broadcasting service considering the interest of the listening public in receiving the best service available on the designated frequency, and this determination, it urges, must be made by a comparison of the proposed services. Johnston Broadcasting Co. v. Federal Communications Commission, 1949, 85 U.S.App.D.C. 40, 48, 175 F.2d 351, 359, and Plains Radio Broadcasting Co. v. Federal Communications Commission, 1949, 85 U.S.App.D.C. 48, 51–2, 175 F.2d 359, 362–363, are cited. Urging further that the record demonstrates its own superiority in these respects, appellant concludes the Commission exceeded its lawful authority in granting the permit to the Cleveland Company because of its alleged greater integration of ownership with management, greater degree of local residence among its stockholders, and the diversity of ownership of media of mass communication in the Cleveland area which would result.

■ I. The guiding standards, however stated, must in the end be translated into those of the statute, namely, the "public convenience, interest, or necessity." 47 U.S.C. § 307(a), 47 U.S.C.A. § 307(a). Superiority of one applicant over another in one or more phases of qualification or operational ability does not necessarily constitute superiority under the statutory standards. Nor may the Commission or the reviewing court simply add up the factors as to which each is superior and decide according to the numerical result. This would eliminate the exercise of judgment as to where lies the greater public interest. See Federal Communications Commission v. Pottsville Broadcasting Co., 1940, 309 U.S. 134, 137–138, 60 S.Ct. 437, 84 L.Ed. 656. There must be a weighing of the relative importance of the several factors involved. Assuming minimal qualifications in all essential respects, superiority in those matters most conducive to the public interest will outweigh superiority of a rival in others. Similarly, a slight degree of superiority in several factors might be more than offset by substantial inferiority in one.

■ II. Findings, often in considerable detail, were made as to the qualifications of each applicant, covering efficiency in use of frequency, financial ability, program proposals, operating policies, broadcasting experience, residence, integration of ownership and management, diversity of ownership of media of mass communication, and, as to the Cleveland Company, its reliability and candor. These were the subjects around which the contest revolved. See Johnston Broadcasting Co. v. Federal Communications Commission, supra, 85 U.S.App.D.C. at page 46, 175 F.2d at page 357. There is no question as to the range of the basic findings. Appellant does press, however, that the Commission both failed to make comparative or ultimate findings as to the points of difference shown by the basic findings, and refused to grant or deny each of the comparative findings which it requested. As to the latter point, it is clear that if the comparisons made are adequate, failure to make others requested is immaterial. The parties may not control the exact form or content of a decision.

■ As to the question whether adequate comparative findings were made, Johnston Broadcasting Co. v. Federal Communications Commission, supra, 86 U.S.

App.D.C. at page 46, 175 F.2d at page 357, sets forth certain requirements[1] which cover this and other points. Each of these was met. As we subsequently point out, the reason for the final conclusion in favor of the Cleveland Company is clearly stated; this conclusion is a rational one from the basic findings; the latter are quite sufficient in number and substance to support the conclusion; the ultimate facts are rational inferences from the basic factual findings; and the latter find substantial support in the evidence under the rule as recently stated by the Supreme Court in Universal Camera Corp. v. N. L. R. B., 1951, 340 U.S. 474, 71 S.Ct. 456. The final conclusion is shown clearly enough to have been reached upon a composite consideration of the findings indicating the differences. In sum, the principles set forth in Johnston Broadcasting Co. v. Federal Communications Commission, supra, were followed in all material and substantial respects.

III. (a) The Commission held it was not required to consider *financial ability* on a comparative basis. Both applicants were found to be financially qualified not only to construct the proposed station but to operate it for an initial period without expected normal revenue. See Saginaw Broadcasting Co. v. Federal Communications Commission, 1938, 68 App. D.C. 282, 290–291, 96 F.2d 554, 562–563; Federal Communications Commission v. Sanders Bros. Radio Station, 1940, 309 U. S. 470, 475, 60 S.Ct. 693, 84 L.Ed. 869. Appellant's greater financial strength is demonstrated by both evidence and findings. This was considered. No more is required. The award need not go to the stronger. Appellant does not so contend, but does urge that the evidence left the Cleveland Company's financial situation in such doubt as to involve public risk in awarding the permit to that Company. This, however, is contrary to a judgment made by the Commission on adequate evidence. (b) *Character* is another factor. 47 U.S.C. § 319(a), 47 U.S.C.A. § 319(a); see, also, 47 U.S.C. § 308(b), 47 U.S.C.A. § 308(b); Rules of the Commission, § 3.24 (d). The proposed program director of the Cleveland Company, who was also a stockholder and director, testified at length regarding programs and operating policies. Under questioning he said, contrary to fact, that no unsatisfied judgment was outstanding against him. Nevertheless, a full reading of the relevant questions and answers does not convince us the Commission erred in concluding that "the record does not support a finding adverse" to him or to the Cleveland Company. Furthermore, doubt would not justify a ruling by us, on the record as a whole, that the Cleveland Company, with its numerous officers and stockholders, had not qualified as to character. Federal Communications Commission v. WOKO, Inc., 1946, 329 U.S. 223, 67 S.Ct. 213, 91 L.Ed. 204, is inapposite. There the Commission had refused to renew a license because "of misrepresentations made to the Commission and its predecessor as to the ownership of applicant's capital stock." 329 U.S. at page 225, 67 S.Ct. at page 214. Here the Commission's finding was favorable to the Cleveland Company. (c) As to *program plans and proposals* the Commission found appellant's to be to some extent further advanced and better prepared and also that its schedules indicated greater time allocated to certain types of public service programs. The conclusion, however, was that each applicant proposed to render a meritorious

---

1. "* * * (1) The bases or reasons for the final conclusion must be clearly stated. (2) That conclusion must be a rational result from the findings of ultimate facts, and those findings must be sufficient in number and substance to support the conclusion. (3) The ultimate facts as found must appear as rational inferences from the findings of basic facts. (4) The findings of the basic facts must be supported by substantial evidence. (5) Findings must be made in respect to every difference, except those which are frivolous or wholly unsubstantial, between the applicants indicated by the evidence and advanced by one of the parties as effective. (6) The final conclusion must be upon a composite consideration of the findings as to the several differences, pro and con each applicant."

service, including public service features, and neither demonstrated that its overall program would better serve the public interest than that of the competing applicant. These conclusions followed detailed findings, resting firmly upon the evidence. A review of evidence and findings does not lead us to set aside the judgment of the Commission, in reaching which the respects in which appellant showed superiority were not overlooked. Consideration was given to a mass of proposals about which reasonable men might well differ. (d) In *broadcasting experience* also the Commission recognized the superiority of appellant but thought this, in and of itself, should not be a determining factor as against a rival also well qualified in numerous respects, saying, " * * * Were we to regard such narrow considerations as controlling in the selection of competing applicants for broadcast facilities, the effect of such policy might well be, in many situations, to shut out numerous qualified newcomers from the field of broadcasting and thus to deprive that art in certain areas of the lifeblood of competition which is necessary to its health and improvement." Since the findings here are not in issue, the question is again one of judgment as to the significance to be accorded greater broadcasting experience in the whole mosaic of the case. The Commission weighed the matter and was not required to make appellant's superiority decisive. (e) The Commission concluded as well that appellant's proposed station would result in a somewhat more *efficient use of the designated frequency* during daytime hours by serving a larger population. Pointing out, however, that this population would lie outside the Cleveland metropolitan area, a substantial portion of which now receives primary broadcasting from three existing Cleveland stations, and will be served from another station which has been authorized, the Commission said, "It is our view that this advantage of additional coverage is outweighed by other considerations, discussed herein, favoring a grant" to the Cleveland Company. (f) Finally, as to *operating policies,* appellant separates this factor from program proposals and points out that so separated it is not made the subject of a comparative finding and, also, that the basic findings relating to the policies of each applicant were disregarded. While it is true the comparative discussion in the Decision makes no specific reference to program policies, "the overall program service" of each applicant, "as outlined in its program schedules," is there discussed. This occurs in a context which refers to the larger periods of time allocated by appellant to certain types of public service programs. These programs, as the Decision elsewhere shows, were a principal factor in connection with operating policies. Accordingly there was not an entire omission to consider the comparatively favorable situation of appellant in regard to policies. It might well be that a fuller and more explicit comparison would have been desirable, but to say this does not mean that reversal would be justified by reason of its absence.

IV. We come to the reasons which principally led the Commission to grant the permit to the Cleveland Company, namely, local residence of its owners and managers and their familiarity with local conditions; the integration of its ownership with its management; and the diversification of the media of mass communication which would result.

■ In a rather full review of the facts the Commission concluded that the members of the Cleveland Company "are deeply rooted in the life of Cleveland and are representative of practically every phase of public activity in that city," whereas the immediate and ultimate legal control of appellant is for the most part in absentee interests. It believed the Cleveland Company "is to be preferred * * * because of the local residence of its stockholders and the far greater knowledge of and association with Cleveland and its various civic enterprises on the part of its stockholders, officers and directors." It pointed out that "In considering, on a comparative basis, competing qualified applicants for broadcast facilities, we have consistently attached considerable weight to the factor of local residence and familiarity with local conditions to be served." It cannot be de-

nied that the Commission acted within its permissible discretion in giving weight to these considerations. See Kentucky Broadcasting Corp. v. Federal Communications Commission, 1949, 84 U.S.App.D.C. 383, 386, 174 F.2d 38, 41.

■ By reason of the Cleveland Company's greater integration of ownership with management, the Commission also compared it favorably. The evidence fully supports the basic findings upon which the comparison rests. In its review of the subject the Commission said in part, "* * * We believe that these factors are of particular relevance in the instant case where both applicants propose initially to provide a local non-network service devoted to the particular needs and interests of the Cleveland metropolitan area." Though an independent factor, integration is nevertheless treated implicitly as related to local residence. It is not to be thought that appellant was disqualified because of its situation in these respects; it is not a question of disqualification but of comparing and weighing the relative situation of two qualified applicants in the process of arriving at a final judgment based upon the total situation.

■ An element of preference for the Cleveland Company also resided in the circumstance that the grant of the permit to it "would undoubtedly be conducive to a greater diversification of the media of mass communication in the Cleveland area than would a grant of the application of Scripps-Howard Radio, Inc." This conclusion followed recital of the fact that, although there are now located in Cleveland five AM broadcast stations as well as two daily newspapers and a large number of other publications with which appellant has no connection, appellant is owned and controlled by the same interests which control a third newspaper, the Cleveland Press, with which the Cleveland Company would necessarily compete in the collection of news. In Associated Press v. United States, 1945, 326 U.S. 1, 20, 65 S.Ct. 1416, 1424, 89 L.Ed. 2013, the Supreme Court, in answering the contention that the application of the Sherman Act, 15 U.S. C.A. §§ 1–7, 15 note, to the Associated

Press might interfere with the freedom of the press protected by the First Amendment, said that the Amendment rests on the assumption that "the widest possible dissemination of information from diverse and antagonistic sources" is essential to the public welfare. While uttered in a different context, this thought is the key to the present question. Inherent in the thought is the realization that news communicated to the public is subject to selection and, through selection, to editing, and that in addition there may be diversity in method, manner and emphasis of presentation. Such variations may arise from numerous causes. In considering the public interest the Commission is well within the law when, in choosing between two applications, it attaches significance to the fact that one, in contrast with the other, is dissociated from existing media of mass communication in the area affected. See Stahlman v. Federal Communications Commission, 1942, 75 U.S.App.D.C. 176, 126 F. 2d 124, and Plains Radio Broadcasting Co. v. Federal Communications Commission, 1949, 85 U.S.App.D.C. 48, 52, 175 F.2d 359, 363. This is not to say a permit should be withheld from an applicant because it is otherwise engaged in the dissemination of news. Stahlman v. Federal Communications Commission, supra. But where one applicant is free of association with existing media of communication, and the other is not, the Commission, in the interest of competition and consequent diversity, which as we have seen is a part of the public interest, may let its judgment be influenced favorably toward the applicant whose situation promises to promote diversity.

■ V. Because of the importance attributed by the Commission to the factors in which the Cleveland Company had the advantage, the permit was awarded to it. This was not unlawful, arbitrary or capricious. It was a conclusion which, while by no means inevitable, was based on reasonable grounds and was within the framework of the statute. The successful applicant consists of a variety of persons of responsibility and standing in the community, identified with its life and activities and

free of close relationship with any large existing medium for the communication of news or other programs. This group also holds the promise of furnishing that individual responsibility which is likely to accompany integration of ownership with active management. To decide that, other essential qualifications being present, public interest would be served better in or about Cleveland by this group than by appellant in the award of this particular application is to decide within the realm of lawful discretion, and, therefore, in a manner we must leave unimpaired. This is so notwithstanding a number of respects in which appellant is better qualified. Discretion to choose between qualified applicants is wide, Johnston Broadcasting Co. v. Commission, supra, 85 U.S.App.D.C. at page 46, 175 F.2d at page 357. No case of its abuse is shown in these proceedings, nor does other material error appear.

Affirmed.