SUNBEAM TELEVISION CORPORA-
TION, Appellant,

v.

FEDERAL COMMUNICATIONS COM-
MISSION, Appellee,

Biscayne Television Corporation,
Intervenor.

EAST COAST TELEVISION COR-
PORATION, Appellant,

v.

FEDERAL COMMUNICATIONS COM-
MISSION, Appellee,

Biscayne Television Corporation,
Intervenor.

SOUTH FLORIDA TELEVISION COR-
PORATION, Appellant,

v.

FEDERAL COMMUNICATIONS COM-
MISSION, Appellee,

Biscayne Television Corporation,
Intervenor.

Nos. 13180, 13181, 13183.

United States Court of Appeals
District of Columbia Circuit.

Argued Dec. 6, 1956.

Decided March 14, 1957.

Mr. Alan Y. Naftalin, Washington, D. C., with whom Messrs. Bernard Koteen and Samuel Miller, Washington, D. C., were on the brief, for appellant in No. 13,180.

Mr. Theodore Baron, Washington, D. C., of the bar of the Supreme Court of Missouri, pro hac vice, by special leave of Court, for appellant in No. 13,181. Mr. Arthur W. Scharfeld, Washington, D. C., was on the brief for appellant in No. 13,181.

Mr. Peter Shuebruk, New York City, for appellant in No. 13,183. Messrs.

Jack P. Blume, New York City, and Benito Gaguine, Washington, D. C., also entered appearances for appellant in No. 13,183.

Mr. Henry Geller, Counsel, Federal Communications Commission, with whom Messrs. Warren E. Baker, Gen. Counsel, Federal Communications Commission, and Richard A. Solomon, Asst. Gen. Counsel, Federal Communications Commission, were on the brief, for appellee.

Mr. D. M. Patrick, Washington, D. C., with whom Messrs. Lester Cohen and Stanley S. Harris, Washington, D. C., were on the brief, for intervenor.

Before WILBUR K. MILLER, FAHY and WASHINGTON, Circuit Judges.

FAHY, Circuit Judge.

These are consolidated appeals from a Commission order granting, after a comparative hearing, the application of intervenor, Biscayne Television Corporation, for a construction permit for a new television station to operate on Channel 7, Miami, Florida, and denying the mutually exclusive applications of appellants, Sunbeam Television Corporation, East Coast Television Corporation and South Florida Television Corporation.[1] The Commission found all applicants qualified to operate the station in the public interest. It selected intervenor Biscayne as best qualified. The Commission preferred Biscayne in three comparative criteria: broadcast experience, past broadcast records of its principals, and integration of ownership with management. All appellants, on the other hand, were given a clear preference over Biscayne in diversification of control over media of mass communication. This was due to the fact that Biscayne's principals have controlling interests in Miami's only two daily newspapers and in two Miami radio stations, as well as in numerous mass media elsewhere.

Preferences as to diversification of the occupation of principals were also awarded to all appellants, and two were preferred as to local residence of principals.

The Commission determined that a consultant contract which Mr. Trammell, the President, Director and General Manager of Biscayne, had with the National Broadcasting Company, a nationwide network organization,[2] "should have no adverse effect upon the application of Biscayne in this proceeding." We think this was error. Mr. Trammell had been President and more recently Chairman of the Board of NBC, and continued to be associated with NBC on a consultant basis. At the time of the Commission's decision the unexpired period of his contract with NBC was about four years. The Commission found that the service requirements of the contract were not substantial; but the compensation is $25,000 per annum, and the contract provides that Mr. Trammell will do nothing in conflict with the interests of NBC and that he can be called upon for advice with respect to sales, station problems, talent, films and general policy matters.[3]

Mr. Trammell is the key figure in the Biscayne organization. He is of more importance to Biscayne than even the offices he holds would indicate. According to his own testimony, with a holding of 15% of the corporation's shares he is the vital "middleman" between two groups of stockholders who hold in equal parts the remaining shares. His statement that

"It was definitely understood that I was to be President and chief executive officer and to run the show with such consultation, advice and help from the other two groups as I might need"

leaves no doubt as to the dominance of his position.

---

1. For other litigation involving the same order of the Commission see Gerico Investment Co. v. Federal Communications Commission, 99 U.S.App.D.C. 379, 240 F.2d 410.

2. Hereafter referred to as NBC.

3. The contract has no relevancy to Mr. Trammell's rights under the NBC pension plan.

The failure to give any adverse effect to Mr. Trammell's association with NBC, in considering the comparative qualifications of Biscayne, was a departure from the Commission's established policy that it is desirable for local television stations and network organizations to be independent of each other, and thus to assure that networks can freely compete for affiliation with local stations, and local stations freely compete for network affiliation. This policy, reflected to a degree in § 3.658(f) of the Commission Rules and Regulations,[4] is found in the Commission's decisions. In Abilene Broadcasting Co., 3 Pike & Fischer RR 1684, adverse significance was attached to the fact that a substantial stockholder of the applicant was an officer and director of a network, a part of which was in competition with the applicant. In WJPS, Inc., 3 Pike & Fischer RR 1314, the Commission regarded the fact that a substantial stockholder of the applicant was also vice president of American Broadcasting Company, a network, "an important consideration in deciding which of two mutually exclusive applications should be preferred." The Commission in its opinion refers to Wabash Valley Broadcasting Corp., 3 Pike & Fischer RR 229, where it is stated:

" * * * In the Commission's opinion a serious question is raised concerning the desirability of a network official or stockholder owning any interest in a broadcast licensee, since other stations operating in the same community would be at a competitive disadvantage in attempting to secure a network affiliation with the network in question."

4. Section 3.658(f) reads as follows:
"No license shall be granted to a network organization, or to a person directly or indirectly controlled by or under common control of a network organization, for a television broadcast station in any locality where the television broadcast stations are so few or of such unequal desirability * * * that the competition would be substantially restrained by such licensing. (The word 'control'

The Commission now differentiates these cases, relying on

" * * * the severance of Mr. Trammell's control over network operation which occurred when he resigned from the NBC network. Mr. Trammell's status is no longer that of an officer or employee of a network. The situation of an agent serving two principals whose interest may not always coincide is therefore absent."

A person under contract to do nothing in conflict with a particular network of the scope of NBC, from which he receives compensation of $25,000 per annum, considered with other provisions of the contract to which we have referred, is contractually bound to the interests of the network, though not by the ordinary employee-employer or officer-company relationship. He is an agent "serving two principals whose interests may not always coincide." Mr. Trammell's relationship with NBC is of a character that is not unlikely to affect Biscayne's choice of network affiliation, and NBC's choice of a local outlet in the Miami area.

Though Biscayne was not necessarily disqualified by this conflict of interest of its President, the error in refusing to consider it as adverse to Biscayne cannot be said to be insubstantial. The comparative qualifications of the competing applicants made the choice between them a close one. This is emphasized by the decided advantage of the other applicants with respect to diversification of media of mass communication, long considered important because of the public interest in non-concentration of control over, and of the sources of, media of communication.[5] The Commission

as used in this section includes such a measure of control as would substantially affect the availability of the station to other networks.)"

5. See Scripps-Howard Radio v. Federal Communications Commission, 89 U.S.App. D.C. 13, 189 F.2d 677, certiorari denied 342 U.S. 830, 72 S.Ct. 55, 96 L.Ed. 628; Clarksburg Publishing Co. v. Federal Communications Commission, 96 U.S.App.

held "there can be no question that each of the other three applicants is entitled to a preference over Biscayne on this factor." The importance of this preference given to the appellants over Biscayne is intrinsically obvious. But the importance of Biscayne's own preferences based on the broadcast experience and past records of its principals is not so obvious. In considerable part these preferences appear to have arisen from Biscayne's concentration of media of mass communication, which is itself an adverse rather than a preferential factor. It thus appears that two of Biscayne's three preferences arose from conditions which might on reconsideration cause the Commission to accord them less weight than it accords the preferences of appellants.[6] In any event we cannot say that had the Commission also considered adversely to Biscayne the Trammell arrangements with NBC the decision would have been the same.

Appellants also claim they were denied a fair hearing by the Examiner's refusal to order production of program logs of stations outside Miami which are controlled by Biscayne's principals. The Commission approved the ruling of its Examiner on the ground that these records, though relevant, were not sufficiently material to justify the added delay which would be incurred.[7] Absent any showing by appellants, on the basis of numerous records which were available to them, of some ground for suspecting remissness in past performance of Biscayne's principals, and absent also a proffer to show such remissness in any specific operations outside Miami, we think the refusal does not require reversal.

D.C. 211, 225 F.2d 511; Oregon Television, Inc., 9 Pike & Fischer RR 1401, affirmed, Columbia Empire Telecasters v. Federal Communications Commission, 97 U.S.App.D.C. 112, 228 F.2d 459; McClatchy Broadcasting Co., 9 Pike & Fischer RR 1190, affirmed McClatchy Broadcasting Co. v. Federal Communications Commission, 99 U.S.App.D.C. 195, 239 F.2d 15, rehearing 99 U.S.App.D.C. 199, 239 F.2d 19.

We have considered other questions as to the sufficiency of the evidence to support the Commission's findings and as to the procedure followed by the Commission, and find no significant error.

Because of the failure to consider adversely to Biscayne the arrangements of its President with NBC, above discussed, the order of the Commission is

Reversed and the case remanded for further proceedings not inconsistent with this opinion.

6. " * * * while lack of experience is cured with time, lack of diversification is not." 66 Yale L.J. 377.

7. The Commission said:
" * * * We do not say this type of evidence has no relevancy; however, in this proceeding it could have little, if any, materiality, in view of the primary evidence presented of local station records. * * * "