**McCLATCHY BROADCASTING COM-
PANY, Appellant,**

v.

**FEDERAL COMMUNICATIONS COM-
MISSION, Appellee,
Sacramento Telecasters, Inc.,
Intervenor.**

**No. 12470.**

United States Court of Appeals
District of Columbia Circuit.

Argued May 19, 1955.

Decided Jan. 27, 1956.

Writ of Certiorari Denied March 25, 1957.
See 77 S.Ct. 662.

Mr. Thomas H. Wall, Washington, D.
C., with whom Messrs. Clair L. Stout,
Jerome H. Heckman and Thomas J.
Dougherty, Washington, D. C., were on
the brief, for appellant.

Mr. Stanley S. Neustadt, Counsel, Fed-
eral Communications Commission, New
York City, with whom Messrs. Warren
E. Baker, Gen. Counsel, Federal Commu-
nications Commission, and J. Smith Hen-
ley, Asst. Gen. Counsel, Federal Commu-
nications Commission, were on the brief,
for appellee.

Mr. J. Roger Wollenberg, Washington, D. C., with whom Mr. Dwight D. Doty, Washington, D. C., was on the brief, for intervenor.

Messrs. Elisha Hanson, Arthur B. Hanson, Garland Clarke and Paul L. O'Brien, Washington, D. C., filed a brief, on behalf of American Newspaper Publishers Association, as amicus curiae, urging reversal.

Before WILBUR K. MILLER, FAHY and BASTIAN, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

An examiner of the Federal Communications Commission conducted a comparative hearing concerning the mutually exclusive applications of McClatchy Broadcasting Company and Sacramento Telecasters, Inc., for a television broadcast station construction permit in Sacramento, California.

In his initial decision, the examiner found McClatchy superior to Telecasters in all respects except as to what has come to be called "diversification of control of the media of mass communication." In that regard he necessarily found Telecasters entitled to preferment, because McClatchy is licensee of several radio stations in the central valleys of California [1] and McClatchy Newspapers, of which it is a wholly-owned subsidiary, publishes a number of newspapers in the same area, while Telecasters has no connection with any newspaper or existing broadcasting station and would be a newcomer in the field without broadcast experience, except that one of its officers was formerly connected with an AM station. The examiner considered the diversification factor unimportant because he determined that McClatchy's long history disclosed no tendency toward monopolistic practices and because McClatchy had considerable competition in the broadcasting and publishing fields in its service area. His interesting discussion of the subject is reproduced in the margin.[2]

1. These valleys—the Sacramento and San Joaquin—are about 400 miles long and 100 miles wide, extending from Shasta in the north to below Bakersfield.

2. "It is Telecasters' last contention that is of real substance—that it should be preferred because grant to it would result in a greater diversification of the media of mass communication. The Commission has in the past on a number of occasions preferred non-newspaper applicants over newspaper applicants and newcomers to the field over existing licensees. The rationale of those decisions may be described in capsule form thus: The dissemination of public information involves a process of selection and presentation wherein the human element plays an important role and the end product, both quantitatively and qualitatively, inevitably bears the imprint of the producer. In a society dedicated to the free exchange of ideas it is imperative, that, when avoidable, the public not be placed in a position of dependence upon a single source, or narrow group of sources, for its day-to-day information. Diversification of the ownership of public information media, of course, protects against such monopolistic situations. But diversification is not an end in and of itself and where monopoly, or the threat of monopoly, does not exist such precedents lose force. Neither monopoly nor the threat of monopoly is present here. This record is barren of any evidence that McClatchy has ever engaged in any of those activities frequently associated with monopolistic conduct in the public information field, e. g., cut-throat rate slashes, personnel pirating, violent interference with distribution, or in fact has ever engaged in any concerted action designed to squeeze competitors out of its fields of activity. Further, there is a multiplicity of other mass communication media in the area to be served. Twenty-eight non-McClatchy daily newspapers, eight such Sunday papers and sixty-eight weekly papers circulate in that area. Fifty-one broadcast stations serve various parts of the area. In Sacramento there is one other daily newspaper, five AM stations, three FM stations, construction permits have been issued for two UHF television stations and comparative hearing has been held on applications for an additional VHF channel. In light of such facts, it would appear that grant to McClatchy might issue with the knowledge that it does not seek destruction of competitors and that its viewing and listening audience would not be solely dependent upon it as a source of public information."

The Commission rejected its examiner's recommended decision. Finding only slight differences between the applicants in other respects, it considered the diversification of control of facilities for the dissemination of fact and opinion "to be determinative in this proceeding," denied McClatchy's application, and granted that of Telecasters. McClatchy appeals.

In a prehearing conference, held pursuant to our Rule 38(k),[3] the parties stipulated that two questions are presented here. They agreed as to the wording of the second question—to which we shall refer later in this opinion—but were unable to stipulate as to the form of the first. Consequently the prehearing order contains McClatchy's version of the initial question and also the form in which Telecasters and the Commission think it should be stated.

McClatchy stated the first question thus:

"Whether the Federal Communications Commission, in a hearing for a television station construction permit, can deny an applicant with an outstanding record of public service, and which is otherwise superior to its opponent, solely because of ownership of newspapers and broadcasting stations?"

This interesting query framed by the appellant does not seem to us to be presented here, because to some extent it begs the question. There is no doubt that McClatchy has "an outstanding record of public service." And the Commission so found. In the course of its decision it said:

"The record is replete with evidence relating to the meritorious service rendered by the McClatchy radio stations. To detail minutely the public service activities of its newspapers and radio stations would unnecessarily lengthen our decision * * *.

"The record leaves no doubt that McClatchy in the operation of its broadcast stations has given full cooperation to charitable, civic and governmental operations without charge. A plethora of awards and letters of commendation attest to the praiseworthy service it renders to the communities it serves * * *."

But, contrary to the assumption in appellant's version of the first question, the Commission did not find McClatchy superior in every area of comparison save that of diversification of facilities for publishing information, and did not deny it the construction permit solely because of its ownership of newspapers and broadcasting stations. The Commission in its decision analyzed and compared all the characteristics and proposals of the two applicants. It found both qualified to receive a grant were its application unopposed. It found McClatchy superior in some respects and Telecasters superior in some, while in other respects it found no reason for preference between them.

After its exhaustive discussion of the various phases of comparison, the Commission did not find, on the whole, preponderant superiority in either applicant. So it turned to the matter of diversification of control of communications facilities, concerning which there can be no question as to Telecasters' right to preference, and found that consideration to be determinative. But the Commission gave decisive weight to the factor only after carefully considering

---

3. Rule 38(k) is as follows:

"In any review or enforcement proceeding the court may in its discretion direct the attorneys for the parties to appear before the court or a judge thereof for a prehearing conference to consider the simplification of the issues and such other matters as may aid in the disposition of the proceeding by the court. The court or judge shall make an order which recites the action taken at the conference and the agreements made by the parties as to any of the matters considered and which limits the issues to those not disposed of by admissions or agreements of counsel, and such order when entered controls the subsequent course of the proceeding, unless modified to prevent manifest injustice."

all the characteristics and proposals of the two competitors and finding them almost in balance. We conclude, therefore, that McClatchy's statement of the primary question here is not accurate. We agree with the Commission and Telecasters that the question is properly phrased as follows:

"Whether, where the Commission has concluded after a comparative hearing between two competing applicants for a television station that there are only slight differences between the applicants in other respects, it may attach decisive significance to the fact that the one applicant is dissociated from existing media of mass communications in the area affected while the other applicant owns radio and television stations and newspapers in the area?"

█ The question must be answered in the affirmative. In Scripps-Howard Radio, Inc., v. F. C. C., 1951, 89 U.S.App. D.C. 13, 19, 189 F.2d 677, 683, we said:

"* * * In considering the public interest the Commission is well within the law when, in choosing between two applications, it attaches significance to the fact that one, in contrast with the other, is dissociated from existing media of mass communication in the area affected. * * *"

We have heretofore quoted, in footnote 2, the examiner's cogent statement to the effect that the diversification issue should not weigh against an applicant already engaged in the dissemination of information to the public unless he has exhibited monopolistic tendencies or unless a grant to him would tend to create a monopoly. The Commission disagreed with its examiner on this proposition. It said that ordinarily it

"* * * will incline toward an applicant not associated with the local channels of communication of fact and opinion over an applicant having such association. Such affiliation does not, of course, exclude that applicant from comparative consideration. * * * Although

an important factor, it is weighed along with all other considerations to determine which of the competing applicants will better serve the public interest and, as shown by recent decisions, the diversification factor may be counter-balanced by other factors. * * *"

█ There is much to be said in support of the examiner's position concerning diversification of control, but we cannot say the Commission went beyond its province in disagreeing with him. It has the duty, in choosing between competing applicants, to decide which would better serve the public interest. Where that interest lies is always a matter of judgment and must be determined on an *ad hoc* basis. The broad statutory standard of "public convenience, interest, or necessity." [4] is not susceptible of precise or comprehensive definition. Its meaning cannot be imprisoned in a formula of general application. The responsibility for making the determination is committed to the Commission, subject to the limitations that it must proceed within constitutional and statutory bounds and that it must not act arbitrarily or capriciously. We hold the Commission is entitled to consider diversification of control in connection with all other relevant facts and to attach such significance to it as its judgment dictates.

This does not mean that the owner of a newspaper is disqualified as a licensee. Stahlman v. F. C. C., 1942, 75 U.S.App. D.C. 176, 126 F.2d 124. Nor does it mean that the Commission may reject a newspaper's application and grant that of a competing non-newspaper applicant without also considering and comparing all other relevant factors. But it does mean that the Commission is free to let diversification of control of communications facilities turn the balance, if it reasonably concludes that it is proper to do so.

We turn to the second question, which all parties agree is properly stated thus:

"Whether the Federal Communications Commission was arbitrary and capricious and made findings not

4. Section 307(a) of the Communications Act of 1934, 47 U.S.C.A. § 307(a).

supported by substantial evidence, to the effect that Sacramento Telecasters, Inc., has given thoughtful consideration to the needs of the area to be served by its proposed station; has demonstrated an awareness of the community's needs so far as television is concerned; has proposed program service designed to meet such needs; will be as sensitive as McClatchy Broadcasting Company to public desires; and that neither applicant merits preference because of its ability to appraise and meet the needs of the area to be served?"

█ There is ample evidence in the record to support the Commission's finding that Telecasters had thoughtfully considered and is aware of and sensitive to the community's television needs, and has proposed a program service designed to meet them. The proof shows that the same is true of McClatchy, with the evidence perhaps preponderating in its favor upon comparison of the two; but the Commission did not act arbitrarily or capriciously in deciding neither deserved preference as to ability to appraise and meet the needs of the area. With ample support in the record, the Commission found Telecasters superior to McClatchy as to local ownership, participation in the civic life of the community, and in the integration of ownership with management.

The choice between the applicants had to be and was made after comparison of all pertinent factors. Although the examiner's choice of McClatchy as superior in all respects except diversification of control is strongly supported by the proof, we cannot find that the Commission's decision was arbitrary, capricious or unsupported by substantial evidence. As we said in Pinellas Broadcasting Company v. F. C. C., 1956, 97 U.S.App. D.C. 236, 230 F.2d 204:

"The controversy is in an area into which the courts are seldom justified in intruding. The selection of an awardee from among several qualified applicants is basically a matter of judgment, often difficult and delicate, entrusted by the Congress to the administrative agency. The decisive factors in comparable selections may well vary; sometimes one applicant is superior to another in one respect, whereas in another case one applicant may be superior to its rivals in another feature. * * *"

From what has been said it follows that the second question stated in the prehearing order must be answered in the negative.

Affirmed.