Mrs. Burton JOSEPH, Robin DeGrazia,
Citizens Committee To Save WFMT–
FM, et al., Appellants,

v.

FEDERAL COMMUNICATIONS COM-
MISSION, Appellee,

WGN Continental FM Company and Gale
Broadcasting Co., Inc., Intervenors.

No. 21873.

United States Court of Appeals
District of Columbia Circuit.

Argued June 13, 1968.

Decided July 30, 1968.

Petition for Rehearing Denied
Sept. 25, 1968.

Mr. Eugene F. Mullin, Jr., Washington, D. C., with whom Mr. Harry R. Booth, Chicago, Ill., a member of the bar of the State of Illinois, was on the brief, for appellants. Messrs. J. Parker Connor and S. White Rhyne, Jr., Washington, D. C., also entered appearances for appellants.

Mrs. Lenore G. Ehrig, Counsel, Federal Communications Commission, with whom Messrs. Henry Geller, General Counsel, and John H. Conlin, Associate General Counsel, Federal Communications Commission, were on the pleadings for appellee.

Mr. R. Russell Eagan, Washington, D. C., with whom Mr. Robert A. Beizer, Washington, D. C., was on the pleadings, for intervenor WGN Continental FM Company. Mr. Reed Miller, Washington, D. C., was on the pleadings for intervenor Gale Broadcasting Co., Inc.

Before EDGERTON, Senior Circuit Judge, and WRIGHT and LEVENTHAL, Circuit Judges.

## PER CURIAM.

Appellants challenge a Federal Communications Commission order approving the assignment [1] of the license of WFMT (FM), an award-winning fine arts station in Chicago, from an independent broadcasting company to WGN Continental FM Broadcasting Company, a wholly owned subsidiary of the Tribune Company. Appellants are Mrs. Robin DeGrazia, 14 other individual listeners, and the Citizens Committee to Save WFMT(FM). The Tribune Company operates, through subsidiaries, WGN (AM) and WGN(TV) in Chicago, and publishes the *Chicago Tribune* and the *Chicago American,* newspapers with a daily circulation exceeding 800,000 and 400,000, respectively, and Sunday circulations exceeding 1,150,000 and 490,-000.

The assignment application was filed with the Commission on November 6, 1967. On March 27, 1968, the Commission approved the assignment without having held an evidentiary hearing, over the dissent of Commissioner Johnson, who felt that a hearing was required on the issue of control of communications media. There was no majority opinion or findings. The Commission's minutes merely state: "Granted consent as to assignment of license." [2]

---

1. Pursuant to 47 U.S.C. § 310(b) (1964).

2. The court file contains Public Notice— B 14844, Report No. 7150, March 27, 1968. This is apparently a "press release," a document describing the action as one that "has been approved by the FCC," rather than purporting to constitute findings accompanying the order. This report identifies interests of the assignee outside Chicago, as including: KDAL AM and TV, Duluth; KWGN–TV, Denver; a CATV system in Houghton-Hancock, Michigan; WPIX FM and TV in New York City; WICC, Bridgeport, Connecticut; the "New York News" and four newspapers in Florida.

This document also stated: "Grant of the WFMT(FM) assignment application was made without prejudice to such further action as the Commission may deem appropriate as a result of the pending civil antitrust suit, United States of America v. Chicago-Tribune-New York News Syndicate, Incorporated, Civil No. 4596, United States District Court for the Southern District of New York, filed November 21, 1967.

Between the time the proposed assignment was announced and March 27, 1968, the Commission received several letters and telegrams expressing concern and opposition to the assignment, but no one filed a petition to deny.[3] On March 21, 1968, appellants' counsel telegraphed the Commission that he had been requested by interested citizens to urge the Commission to hold public hearings on the proposed purchase. Four days later, he advised the Commission by telegram that he was forwarding a motion for public hearings and for intervention. That motion, naming Mrs. Robin DeGrazia, an appellant here, as one of the petitioners, was received at the Commission offices on March 26. It related various facts to show the petitioners' interest, then detailed reasons why the assignment was not in the public interest. Petitioners requested public hearings on the proposed purchase and leave to intervene therein.

The motion apparently did not come to the attention of the Commission prior to its March 27 decision. On April 4, however, a letter was sent to appellants' counsel over the signature of the Commission's Secretary. Responding to the objections raised by the motion, it advised that the assignment application had been granted after full consideration of the questions of programming and concentration of control. In particular, it related assignee's unequivocal representation that no changes in staff or programming were intended, and stated that the Commission took into consideration the other competing media, including daily newspapers, in the Chicago market. The letter closed with the state-

ment that petitioners' request "accordingly is denied."

Also on April 4, but of course before he received the letter from the Commission, appellants' counsel advised assignor and assignee that he intended to file a petition for reconsideration with the Commission, and if that failed, to file an appeal. After counsel received the Commission's letter of April 4 denying petitioners' request for hearing, he advised assignor and assignee that he intended to file a notice of appeal. He did so without any new, intervening pleading to the Commission. Appellants now move for summary reversal and stay. The issues are clear, and the pleadings of all the parties agree that the case is appropriate for summary disposition. Accordingly, we have undertaken to decide the case on the merits.

The primary argument advanced in opposition to appellants' motion is that appellants failed to exhaust administrative remedies.[4] Section 405 of the Communications Act provides that to be eligible to seek judicial review of a Commission order, one either must have been a party to the proceedings resulting in the order, or must have petitioned for reconsideration of the order.[5] Thus, we have held that the appeal of a party who "did not seek to become a party below and did not seek rehearing as a statutory condition precedent to invoking our jurisdiction * * * must be dismissed."[6]

█ It is not inconsistent with this reading of the statute to find that administrative remedies have been exhausted here. Under the peculiar circumstances of this case, counsel for appellants could

---

3. *See* 47 U.S.C. § 309(d) (1964).

4. This contention is clearly valid with respect to all of the appellants individually except Mrs. DeGrazia, since they at no time appeared before the Commission. Of course, this does not foreclose the possibility that they are members of the class Mrs. DeGrazia claims to represent.

5. 47 U.S.C. § 405 (1964).

6. Southwestern Publishing Co. v. FCC, 100 U.S.App.D.C. 251, 255, 243 F.2d 829, 833 (1957); *accord,* O'Neill Broadcasting Co. v. United States, 100 U.S. App.D.C. 38, 40, 241 F.2d 443, 445 (1956); *see* Red River Broadcasting Co. v. FCC, 69 App.D.C. 1, 98 F.2d 282, cert. denied, 305 U.S. 625, 59 S.Ct. 86, 83 L.Ed. 400 (1938).

reasonably infer that the Commission had treated the March 26 motion as a petition for reconsideration. In counsel's April 4 letter to assignor and assignee, he stated his intention to file a petition for reconsideration. When he was informed by letter of April 4 that his motion and request for hearing had been denied, evidently on consideration given *after* the initial decision, and he was in receipt of a denial accompanied by "a concise statement of the reasons therefor," as required by the Act for denial of petitions for reconsideration,[7] he was justified in immediately approaching this court.

■ The question whether there has been adequate compliance with the prescribed prerequisites to judicial review cannot be answered mechanically. It involves consideration of the purpose of the requirement, the type of issue, and the nature of the party. Thus, in criminal cases, where the time for noting an appeal is jurisdictional,[8] any notice filed within the designated time which reveals an intention to appeal is sufficient to give this court jurisdiction, even if it does not comply with the detailed requirements of Fed.R.App.P. 3(c).[9] This lenity reflects the notice nature of the requirement, the significance to the appellant of the appeal, and the fact

that the appellant is often unskilled in law.

■ "The obvious purpose of section 405 is to afford the Commission an opportunity to consider and pass upon matters prior to their presentation to the court."[10] Appellant's motion—considered after the initial decision—served that purpose. It would have contained nothing more of substance[11] had it been filed after March 27, since the Commission failed to make findings and did not render an opinion. Moreover, Mrs. DeGrazia is entitled to consideration as a representative of the listening public. Such parties do not have the same sort of Washington representation to uncover threats to their interest, or deploy apparatus to combat them, as do parties whose interest is economic. We think the facts here show substantial compliance by such a party with the requirement of petition for reconsideration, and that the Commission cannot insulate itself from judicial review because she did not refile the identical pleading with a different caption.

At oral argument on these motions, Commission counsel suggested that the Commission did not act upon the motion, but that it was handled by the staff. This, of course, does not appear from the letter. We have not been cited to

7. 47 U.S.C. § 405 (1964).
   The letter of April 4, 1968, advised counsel:
   "That application was granted by the Commission on March 27, 1968 after full consideration of the questions of programming and concentration of control, among others. * * *
   "In granting this application the Commission took into consideration the other competing media, including daily newspapers, in the Chicago market. It is noted that in addition to Stations WFMT(FM), WGN and WGN-TV there are 13 commercial FM stations, 15 commercial AM stations and 3 VHF and 3 UHF operating stations assigned to Chicago. Included among those are AM, FM and TV stations owned by each of the national networks. These figures do not include AM and FM stations assigned to communities adjacent to Chicago."

8. United States v. Robinson, 361 U.S. 220, 80 S.Ct. 282, 4 L.Ed.2d 259 (1960).

9. *E. g.*, United States v. Duncan, 310 F.2d 367 (7th Cir. 1962), cert. denied, 373 U.S. 938, 83 S.Ct. 1542, 10 L.Ed.2d 693 (1963); Blunt v. United States, 100 U.S.App.D.C. 266, 244 F.2d 355 (1957); Boykin v. Huff, 73 App.D.C. 378, 121 F.2d 865 (1941).

10. Gerico Investment Co. v. FCC, 99 U.S. App.D.C. 379, 380, 240 F.2d 410, 411 (1957); *see* Saginaw Broadcasting Co. v. FCC, 68 App.D.C. 282, 286, 96 F.2d 554, 558, cert. denied, 305 U.S. 613, 59 S.Ct. 72, 83 L.Ed. 391 (1938).

11. The fact that the motion did not conform to formal requirements is not dispositive. It did satisfy the minimal requirements of the Communications Act, 47 U.S.C. § 405 (1964), and the Commission may waive the requirements of its regulations, 47 C.F.R. § 1.3 (1968).

and have not ourselves located any Commission regulations delegating authority to deny such motions.[12] Since the Secretary does have authority to sign official Commission correspondence,[13] appellants' counsel could naturally assume that the Secretary was conveying the Commission's decision. Neither the statute nor the regulations specify what form a Commission order denying a petition for reconsideration must take. However, regulations governing other situations at the time of the Secretary's letter made it clear that at least some orders could be issued in the form of letters signed by the Secretary.[14] In the absence of a prohibition on this type of letter-order to dispose of petitions for reconsideration appellants' counsel had no notice or other reason to conclude that the letter-order was impermissible for use in denial of reconsideration.[15]

Mrs. DeGrazia's standing is also questioned. The allegations in the motion before the Commission demonstrated at least prima facie standing.[16]

██ The Communications Act requires the Commission to designate an application for hearing if a substantial and material question of fact is presented

or if the Commission is unable, "for any reason," to find that the public interest, convenience, and necessity would be served by granting the application.[17] The public welfare requires the Commission to provide the "widest possible dissemination of information from diverse and antagonistic sources" and to guard against undue concentration of control of communications power.[18] The Act expressly prohibits assignment of a broadcast license "except upon application to the Commission and upon finding by the Commission that the public interest, convenience, and necessity will be served thereby." [19]

██ The finding required by the statute was concededly not made in so many words. Commission counsel urges that the finding may be implied from the Commission's grant of the application on the presumption of regularity of official action.[20] When Congress requires a finding, its instruction is not to be ignored or given only lip service.[21] The need for articulation of findings requires the decision-making body to focus on the value to be served by its decision and to express the considerations which must be the bases of decision. Although this

---

12. *See* 47 C.F.R. §§ 0.201–.387 (1968), as amended, 33 Fed.Reg. 2445, 3637, 5302, 7153, 8227 (1968).

13. 47 C.F.R. §§ 0.5(b) (5), 51(a) (1968), as amended, 33 Fed.Reg. 8227 (1968).

14. Section 0.287, 28 Fed.Reg. 12404 (1963); section 0.305, 28 Fed.Reg. 12406 (1963). On May 15, 1968, after the letter in this case, the Commission adopted a general regulation, applicable at least to orders issued under delegated authority, stating that orders may be issued in any appropriate form, including by letter. Section 0.204(d), 33 Fed.Reg. 8227 (1968).

15. The Commission and intervenors insist that the motion was considered as an informal objection, see 47 C.F.R. § 1.587 (1968), which would not entitle the objector to seek judicial review. But however the Commission might be advised to deal with informal objections, by the procedure utilized here it stands the risk of misleading a party into believing that it has treated his pleading formally, and

it may not then expect to defeat judicial review.

16. *See* Office of Communication of United Church of Christ v. FCC, 123 U.S.App.D.C. 328, 359 F.2d 994 (1966).

17. 47 U.S.C. § 309(e) (1964).

18. *Associated Press v. United States,* 326 U.S. 1, 20, 65 S.Ct. 1416, 89 L.Ed. 2013 (1945); Scripps-Howard Radio, Inc. v. FCC, 89 U.S.App.D.C. 13, 19, 189 F.2d 677, 683, cert. denied, 342 U.S. 830, 72 S.Ct. 55, 96 L.Ed. 628 (1951).

19. 47 U.S.C. § 310(b) (1964).

20. *See, e. g.,* Pacific States Box & Basket Co. v. White, 296 U.S. 176, 56 S.Ct. 159, 80 L.Ed. 138, 101 A.L.R. 853 (1935).

21. *See* United States v. Baltimore & O. R. R., 293 U.S. 454, 462–465, 55 S.Ct. 268, 79 L.Ed. 587 (1935). *See also* Saginaw Broadcasting Co. v. FCC, 68 App.D.C. 282, 96 F.2d 554, cert. denied, 305 U.S. 613, 59 S.Ct. 72, 83 L.Ed. 391 (1938).

defect is perhaps not the sort which could be raised collaterally,[22] it deserves serious attention on direct review of a Commission order. Assuming for sake of discussion that in a proper case such finding of public interest may be implied, certainly that finding cannot fairly be inferred when the decision was made without a hearing or any statement of reasons, and at a time when the Commission's contemporaneous action revealed at least grave doubt as to whether such assignments are in the public interest. For on the same day, and in the same Commission meeting at which the WFMT(FM) assignment was approved, the Commission adopted a notice of proposed rulemaking which would prohibit such an acquisition in the future as on its face contrary to the public interest.[23] This is not conclusive, since of course an agency may change its standards prospectively,[24] though that power is not in derogation of the duty to change them retrospectively when that better furthers the overall public interest. When the subject of surveillance is as sensitive as that involved here, when there is no hearing at which the full facts are brought out, promoting confidence that all relevant facts and aspects have been considered and that the public interest would be served by the grant, when the affirmtive finding of public interest required by Congress does not appear expressly, when there is no opinion or other statement providing a reasoned application of articulated standards to the facts of the case, and when the Commission has at least some concern that under today's conditions the public interest requires a strict approach, there exists a combination of danger signals that cannot be ignored or bypassed. The Commission's order is set aside for failure to conform to the procedural requirements prescribed by Congress, and the case is remanded for further proceedings.

So ordered.

Senior Circuit Judge EDGERTON did not participate.

---

22. *See* Valley Telecasting Co. v. FCC, 119 U.S.App.D.C. 169, 338 F.2d 278 (1964).

23. The proposed rule would preclude grant of a license for a standard broadcast station to a party who already owns or controls an FM or television station in the market; for an FM broadcast station to a party who already owns or controls an unlimited time standard broadcast or television station in the market; and for a television broadcast station to a party who already owns or controls an unlimited time standard broadcast or an FM broadcast station in the market. FCC Docket No. 18110, 33 Fed.Reg. 5315 (1968).

24. The Notice of Proposed Rule Making in Docket No. 18110, 33 Fed.Reg. 5315 (1968), in addition to providing for comments on June 26, 1968, and reply comments on July 8, 1968, stated:

"8. Applications now on file with the Commission will continue to be processed in accordance with existing rules and precedents. Applications filed during the pendency of this rule making which would be within the scope of the proposed rules will not be acted on until the Commission has determined the action to be taken on the proposed rules."

*See also* the Commission's Memorandum Opinion and Order Clarifying Interim Policy, 33 Fed.Reg. 7583 (1968).