## SAGINAW BROADCASTING CO. v. FEDERAL COMMUNICATIONS COMMISSION (GROSS et al., Intervenors).

### No. 6990.

United States Court of Appeals for the District of Columbia.

Decided March 16, 1938.

Herbert M. Bingham and Guilford S. Jameson, both of Washington, D. C., for appellants.

Hampson Gary, George Porter, Fanney Neyman, and Frank U. Fletcher, all of Washington, D. C., for appellee.

Philip G. Loucks, Arthur W. Scharfeld, and Joseph F. Zias, all of Washington, D. C., for interveners.

Before GRONER, Chief Justice, and STEPHENS and MILLER, Associate Justices.

STEPHENS, Associate Justice.

This is an appeal taken under Section 402(b) (1) of the Communications Act of 1934, 47 U.S.C.A. § 402(b) (1),[1] from an order of the Broadcast Division of the Federal Communications Commission denying the application of the appellant for a radio station construction permit, and granting the application of the intervenors for such a permit.

On September 30, 1935, the Saginaw Broadcasting Company, the appellant (hereinafter referred to as such), filed an application for a permit to construct a radio station in Saginaw, Michigan, to operate on the frequency of 1200 kilocycles with a power of 250 watts until local sunset and 100 watts at night. The hours of operation were to be those portions of the broadcast day not occupied by WMPC, a station already in operation on the same frequency in Lapeer, Michigan, a city 40 miles from Saginaw. On February 21, 1936, Harold F. Gross and Edmund C. Shields, the intervenors (hereinafter referred to as such), filed an application for a permit to construct a station in Saginaw to operate on the frequency of 950 kilocycles with a power of 500 watts. Continuous operation was pro-

---

[1] 48 Stat. 1064–1105, as amended by 50 Stat. 189–198, 47 U.S.C.A. §§ 151– 609 (Supp.1937).

posed during the day until local sunset; no broadcasts were to be made at night.

In March, 1936, the Broadcast Division designated these applications for hearing and later a joint hearing was held thereon before a trial examiner. The examiner recommended that the appellant's application be granted, and that that of the intervenors be denied. Oral argument was had before the Broadcast Division on exceptions to the examiner's report. The Division refused to adopt the recommendation of the examiner and entered an order on February 9, 1937, granting the application of the intervenors and denying that of the appellant. The effective date of the order was stated therein to be March 16, 1937. The order, as it appears in the record, contains no findings of fact, but states merely that "The Commission will issue and publish at a subsequent date an opinion setting forth a statement of the facts appearing of record and the grounds for the decision herein reached." [2] The Commission's statement of facts and grounds for decision was filed on March 16, 1937, the effective date of the order. On April 2, 1937, the appellant filed an application for rehearing. This was denied by the Commission on June 2, 1937. On June 18, 1937, the appellant filed its notice of appeal and reasons therefor. Within proper time the intervenors filed notice of intention to intervene in the appeal, as provided by Section 402(d) of the Act.

1. At the outset we are confronted by a motion of the Commission to dismiss the appeal upon the ground that the notice of appeal was not filed within the time limit fixed by the statute. Section 402 of the Communications Act provides that an appeal may be taken from decisions of the Commission to the United States Court of Appeals for the District of Columbia, and further that:

"Such appeal shall be taken by filing with said court within twenty days after the decision complained of is effective, notice in writing of said appeal and a statement of the reasons therefor, . . . Unless a later date is specified by the Com-

mission as part of its decision, the decision complained of shall be considered to be effective as of the date on which public announcement of the decision is made at the office of the Commission in the city of Washington. . . ."

Section 5 of the Act, 47 U.S.C.A. § 155, provides that the Commission may divide its members into not more than three divisions, each of which shall have all the jurisdiction and powers of the Commission itself, that any order made or action taken by any division shall have the same force and effect as if made or taken by the Commission, subject to rehearing by the full Commission as provided in Section 405 of the Act, 47 U.S.C.A. § 405, for rehearing cases decided by the full Commission. Section 405 provides:

"After a decision, order, or requirement has been made by the Commission in any proceeding, any party thereto may at any time make application for rehearing of the same, or any matter determined therein, and it shall be lawful for the Commission in its discretion to grant such a rehearing if sufficient reason therefor be made to appear: Provided, however, That in the case of a decision, order, or requirement made under title III, [containing the provisions relating to radio] the time within which application for rehearing may be made shall be limited to twenty days after the effective date thereof, and such application may be made by any party or any person aggrieved or whose interests are adversely affected thereby. Applications for rehearing shall be governed by such general rules as the Commission may establish. No such application shall excuse any person from complying with or obeying any decision, order, or requirement of the Commission, or operate in any manner to stay or postpone the enforcement thereof, without the special order of the Commission. . . ."

The Commission contends that the right of appeal is governed wholly by the statute and that since the notice of appeal was not filed until June 18, 1937, or more than 20 days after March 16, 1937, the effective date

[2] The minutes of the Broadcast Division for February 9, 1937, recite, however, that "Upon consideration of the application, record and evidence in these cases, . . . the Broadcast Division this day found that the public interest, convenience, and necessity would not be served by granting the application of Saginaw Broadcasting Co., for construc- tion permit, and that public interest, convenience, and necessity would be served by granting the application of Harold F. Gross and Edmund C. Shields, . . ." This appears in the brief of the Commission, not in the record. But even if it were in the record, it does not, as will appear below, constitute a sufficient finding of fact.

of the order, the right of appeal has been lost. The appellant contends that by filing a petition for rehearing on April 2, 1937, which was within the 20 days allowed by Section 405 for the filing of such petitions, the running of the period within which an appeal might be taken was suspended, and that since the notice of appeal was filed within 20 days after the Commission's final decision on the petition for rehearing, the taking of the appeal was timely.

In the Federal courts the rule is well established that in judicial proceedings the filing of a petition for rehearing, or of a motion for new trial, will suspend the running of the period within which an appeal may be taken, and that this period then begins to run anew from the date on which final action is taken on the petition or motion, whether it be denied or granted. The rule as above stated applies even though a statute fixes the time within which appeal may be taken as a definite period from the entry of judgment. See Wayne United Gas Co. v. Owens-Illinois Glass Co., 1937, 300 U.S. 131, 137, 57 S.Ct. 382, 385, 81 L.Ed. 557, and cases therein cited; Morse v. United States, 1926, 270 U.S. 151, 153, 154, 46 S.Ct. 241, 242, 70 L.Ed. 518, and cases therein cited; cf. Citizens Bank v. Opperman, 1919, 249 U.S. 448, 39 S.Ct. 330, 63 L.Ed. 701.

This rule has been applied by this court, as well as by other circuit courts of appeals, to proceedings before the Board of Tax Appeals. Helvering v. Continental Oil Co., 1933, 63 App.D.C. 5, 68 F.2d 750; Helvering v. Louis, 1935, 64 App.D.C. 263, 77 F.2d 386, 99 A.L.R. 620; Commissioner v. Lincoln-Boyle Ice Co., 7 Cir., 1937, 93 F.2d 26; Burnet v. Lexington Ice & Coal Co., 4 Cir., 1933, 62 F.2d 906; Griffiths v. Commissioner, 7 Cir., 1931, 50 F.2d 782. In these cases the pertinent sections of the Revenue Act provided that the decision of the Board might be reviewed on appeal "within six months after the decison is rendered" and further, that "a decision . . . shall be held to be rendered upon the date that an order specifying the amount of the deficiency is entered in the records of the Board." In each case the appeal was taken more than six months after the order had been entered, but less than six months after the final decision of the Board upon a petition for rehearing. The courts held, nevertheless, that the appeals were timely.

It is an often quoted principle of statutory construction that the literal words of a statute are to be read in the light of the purpose of the statute taken as a whole, and that the literal meaning will not be followed when it appears that to do so would, in view of the purpose of the statute, lead to an absurd or unjust result. See United States v. Katz, 1926, 271 U.S. 354, 357, 46 S.Ct. 513, 514, 70 L.Ed. 986; Hawaii v. Mankichi, 1903, 190 U.S. 197, 212, 213, 23 S.Ct. 787, 47 L.Ed. 1016; Church of the Holy Trinity v. United States, 1892, 143 U.S. 457, 459, 12 S.Ct. 511, 36 L.Ed. 226. The purpose of Congress in providing the administrative remedy of a rehearing must be considered in interpreting the sections of the statute which govern the right of appeal. The object of statutes providing for petitions for rehearing or motions for new trial is to afford opportunity to commissions and trial courts to correct errors or to hear newly discovered evidence before an appeal; but the function of such petitions and motions is not to supplant, but to supplement, that of appellate review. And if the statute here be construed so that a petition for rehearing does not suspend the running of the statutory period for appeal, the administrative benefit to the Commission of such petitions may well be destroyed. Litigants may be discouraged from filing petitions for rehearing because of fear that the right of judicial review may be lost; for it is hardly to be expected that within 20 days a petition for rehearing may be properly prepared by counsel for a defeated applicant, substantially considered by the Commission, and ruled on. It is doubtful, moreover, whether this court would have jurisdiction to entertain an appeal while such a petition was pending before the Commission. Cf. Voorhees v. Noye Manufacturing Co., 1894, 151 U.S. 135, 14 S.Ct. 295, 38 L.Ed. 101; Vincent v. Vincent, 1884, 3 Mackey 320, 14 D.C. 320; Brown v. Evans, 18 F. 56, C.C.D. Nev., 1883.

The Communications Act differs substantially from the Revenue Act involved in the cases hitherto cited only in the provision of Section 405 that "No such application [for rehearing] shall excuse any person from complying with or obeying any decision, order, or requirement of the Commission, or operate in any manner to stay or postpone the enforcement thereof, without the special order of the Commission." We think that the legislative history of this

section of the Communications Act indicates that its inclusion ought not require a different result. The provisions of Section 405 as a whole are substantially those of Section 16a of the Interstate Commerce Act [34 Stat. 592, 49 U.S.C. § 16a (1934), 49 U.S.C.A. § 16a], and the provision above quoted was adopted almost verbatim. The Interstate Commerce Act makes no provision for direct appellate review of orders by the Interstate Commerce Commission. Hence the language of Section 16a could not, as used in that statute, have been intended to defeat the general rule that a petition for rehearing will suspend the running of the appeal period. We do not think that Congress intended to enlarge the meaning of this language when it was used in the Communications Act.

Accordingly, we hold that the filing of a petition for rehearing suspends the running of the appeal period, and that an applicant has 20 days from the date of final action on the petition for rehearing within which to file his notice and reasons for appeal. The motion to dismiss the appeal herein is therefore denied.

2. The appellant assigns as reasons for its appeal numerous alleged errors of the Commission in making, and in failing to make, specific findings of fact from the evidence adduced at the hearing. These assignments require an inquiry into the purpose and necessary content of findings of fact under the Communications Act.

The Act in Section 319(a), 47 U.S.C.A. § 319(a), provides that the Commission may grant a construction permit for a radio station, if public convenience, interest, or necessity will be served. Section 402(b) of the Act provides that an appeal may be taken to this court from a denial of an application for a construction permit. Section 402(c) provides that within 30 days after the filing by the unsuccessful applicant of a notice of appeal and a statement of the reasons therefor, the Commission shall file with the court the originals or certified copies of all papers and evidence presented to it upon the application involved in the appeal, and a like copy of the Commission's decision, and that the Commission shall within 30 days thereafter file "a full statement in writing of the facts and grounds for its decision as found and given by it." Section 402(e) provides that the review by this court shall be limited to questions of law, and that findings of fact by the Commission, if supported by substantial evidence, shall be conclusive unless they shall clearly appear to be arbitrary or capricious. Thereby the Act has set out a criterion to govern the Commission in granting or refusing to grant a construction permit, has required a full statement in writing of the facts and grounds for its decision, and has provided the standards for judicial review.

The requirement that courts, and commissions acting in a quasi-judicial capacity, shall make findings of fact, is a means provided by Congress for guaranteeing that cases shall be decided according to the evidence and the law, rather than arbitrarily or from extralegal considerations; and findings of fact serve the additional purpose, where provisions for review are made, of apprising the parties and the reviewing tribunal of the factual basis of the action of the court or commission, so that the parties and the reviewing tribunal may determine whether the case has been decided upon the evidence and the law or, on the contrary, upon arbitrary or extralegal considerations. When a decision is accompanied by findings of fact, the reviewing court can decide whether the decision reached by the court or commission follows as a matter of law from the facts stated as its basis, and also whether the facts so stated have any substantial support in the evidence. In the absence of findings of fact the reviewing tribunal can determine neither of these things. The requirement of findings is thus far from a technicality. On the contrary, it is to insure against Star Chamber methods, to make certain that justice shall be administered according to facts and law. This is fully as important in respect of commissions as it is in respect of courts.

In discussing the necessary content of findings of fact, it will be helpful to spell out the process which a commission properly follows in reaching a decision. The process necessarily includes at least four parts: (1) evidence must be taken and weighed, both as to its accuracy and credibility; (2) from attentive consideration of this evidence a determination of facts of a basic or underlying nature must be reached; (3) from these basic facts the ultimate facts, usually in the language of the statute, are to be inferred, or not, as the case may be; (4) from this finding the decision will follow by the application of the statutory criterion. For example, before the Communications Com-

mission may grant a construction permit it must, under the statute, be convinced that the public interest, convenience, or necessity will be served. An affirmative or negative finding on this topic would be a finding of ultimate fact. This ultimate fact, however, will be reached by inference from basic facts, such as, for example, the probable existence or non-existence of electrical interference, in view of the number of other stations operating in the area, their power, wave length, and the like. These basic facts will themselves appear or fail to appear, as the case may be, from the evidence introduced when attentively considered. Thus, upon the issue of electrical interference evidence may be introduced concerning power and wave length of a proposed station and of existing stations, and expert opinion based upon this evidence may be offered as to the likelihood of interference; and expert opinion based on evidence of field measurements of signal strength of existing stations may also be offered. This testimony may conflict. It is the Commission's duty to find from such evidence the basic facts as to the operation of the proposed and present stations in respect of power, wave length, and the like, and whether or not electrical interference will result from the operation of the proposed station, and then to find as an ultimate fact whether public interest, convenience, or necessity will be served by granting or not granting the application.

■■■ We ruled in Missouri Broadcasting Corporation v. Federal Communications Commission, 68 App.D.C. 154, 94 F.2d 623, 1937, and again in Heitmeyer v. Federal Communications Commission, 68 App.D.C. 180, 95 F.2d 91, 1937, that findings of fact in the broad terms of public convenience, interest, or necessity, the criterion set up by Section 319(a) of the Act, were not sufficient to support an order of the Commission. We now rule that findings of fact, to be sufficient to support an order, must include what have been above described as the basic facts, from which the ultimate facts in the terms of the statutory criterion are inferred. It is not necessary for the Commission to recite the evidence, and it is not necessary that it set out its findings in the formal style and manner customary in trial courts. It is enough if the findings be unambiguously stated, whether in narrative or numbered form, so that it appears definitely upon what basic facts the Com-

mission reached the ultimate facts and came to its decision.

Our conclusions on this topic are, we think, confirmed by the decisions of the Supreme Court which consider what findings of fact are necessary in reports of the Interstate Commerce Commission. Section 14 of the Interstate Commerce Act, 34 Stat. 589, 49 U.S.C. § 14 (1934), 49 U.S.C.A. § 14, requires only that the report of the Commission shall state its conclusions, unless damages are to be awarded. Nevertheless, the Supreme Court has laid down the rule that, although under this section formal findings of fact are not required, substantial findings of the basic and essential facts necessary to support the order must appear. See United States v. Baltimore & Ohio R. Co., 1935, 293 U.S. 454, 465, 55 S.Ct. 268, 273, 79 L.Ed. 587. In Florida v. United States, 1931, 282 U.S. 194, 51 S.Ct. 119, 75 L.Ed. 291, the order of the Commission was one regulating intrastate rates upon the shipment of logs. The Commission based its power to make the order upon Section 13(4) of the Interstate Commerce Act, 49 U.S.C.A. § 13(4), and made a general finding in the language of that section that the intrastate rates in force before the order resulted in "unjust discrimination against interstate commerce." The Court pointed out that the Commission made no findings as to the revenue which had been derived by the carrier from the traffic in question, or which could reasonably be expected under the increased rates, and made no finding that the alteration of the intrastate rates would produce additional income necessary to prevent an undue burden upon the carrier's interstate revenue. The Court then said:

"The question is not merely one of the absence of elaboration or of a suitably complete statement of the grounds of the Commission's determination, to the importance of which this Court has recently adverted . . . but of the lack of the basic or essential findings required to support the Commission's order. In the absence of such findings, we are not called upon to examine the evidence in order to resolve opposing contentions as to what it shows or to spell out and state such conclusions of fact as it may permit. The Commission is the fact-finding body and the Court examines the evidence not to make findings for the Commission but to ascertain whether its findings.

are properly supported." [282 U.S. 194, at page 215, 51 S.Ct. 119, 125, 75 L.Ed. 291].

Similarly, in United States v. Chicago, M., St. P. & P. R. Co., 1935, 294 U.S. 499, 55 S.Ct. 462, 79 L.Ed. 1023, Mr. Justice Cardozo stated, in reversing an order of the Commission because of its failure to find the necessary facts:

"In brief, a schedule of lowered tariffs has been canceled though the facts that control the validity of the reduction have yet to be determined. . . . We would not be understood as saying that there do not lurk in this report phrases or sentences suggestive of a different meaning. One gains at places the impression that the Commission looked upon the proposed reduction as something more than a disruptive tendency; that it found unfairness in the old relation of parity between Brazil and Springfield; and that the new schedule in its judgment would confirm Milwaukee in the enjoyment of an undue proportion of the traffic. The difficulty is that it has not said so with the simplicity and clearness through which a halting impression ripens into reasonable certitude. In the end we are left to spell out, to argue, to choose between conflicting inferences. Something more precise is requisite in the quasi-jurisdictional findings of an administrative agency. [citations] We must know what a decision means before the duty becomes ours to say whether it is right or wrong." 294 U.S. 499, at pages 510, 511, 55 S.Ct. 462, at page 467, 79 L.Ed. 1023.

Decisions of state courts also support our conclusions. Thus in Kewanee & G. Ry. Co. v. Illinois Commerce Comm., 1930, 340 Ill. 266, 172 N.E. 706, a certificate of public convenience and necessity was granted to a motor carrier for the transportation of freight between certain cities and towns in Illinois. This action was based upon findings:

" . . . that the existing facilities for the transportation of property between . . . [named towns and cities] are inadequate and insufficient for the convenience and necessity of the public and that the public utilities now occupying some parts of this territory cannot reasonably be required to provide the necessary frequency of service; that the public convenience and necessity require the operation of motor vehicles for the transportation of property between the points hereinabove named." [340 Ill. 266, at page 268, 172 N.E. 706, at page 707]

The court held that these findings were insufficient to support the order, saying:

"The findings made by the commission express a mere conclusion that the present facilities for the transportation of property between all these communities are inadequate and insufficient for the convenience and necessity of the public and that public convenience and necessity require the operation of motor vehicles for the transportation of property between said communities. These findings are not specific enough to enable the court to review intelligently the decision of the commission and ascertain if the facts on which the commission has based its order afford a reasonable basis for it [citations], and the order is therefore void, [citations]." [340 Ill. 266, at pages 269, 270, 172 N.E. 706, at page 708]

These decisions show that a reviewing court cannot properly exercise its function upon findings of ultimate fact alone, but must require also findings of the basic facts which represent the determination of the administrative body as to the meaning of the evidence, and from which the ultimate facts flow. Such findings are, we think, just as necessary in cases involving the application of the statutory criterion of public convenience, interest, or necessity set up by the Communications Act, as in those cases which under the Interstate Commerce Act require the application of the standard of unjust discrimination, or in those cases which under state public utility statutes require the application of the criterion of public convenience and necessity.

3. With these principles in mind we turn to the appellant's specific reasons for appeal. In the view which we take of the case, however, it is necessary for us to consider only those reasons which relate to two issues of fact, namely, the proposed schedule of hours of operation and the financial qualifications of the intervenors.

As to hours of operation, the appellant first asserts that the Commission erred in finding that:

"The hours which the applicant [the appellant] proposed to use would preclude broadcasts from 10 a. m. to 2 p. m.; from 3:30 p. m. to 6:30 p. m.; and from 7:30 p. m. to 10:30 p. m."

for the reason that such finding is contrary to the undisputed evidence. This assertion by the appellant is borne out by the record. The contents of the appellant's application

were made a part of the evidence by stipulation. The application contained, among other proposed hours, the following:

"Thursday: 6 a. m. to 10 a. m.; 2 p. m. to 3:30 p. m.; 6 p. m. to 1 a. m. . . .; Saturday: 6 a. m. to 1 a. m. (19 hours); . . ."

Comparison of the two statements shows that that of the Commission is erroneous in that the appellant's proposed hours of broadcasting do include those between 7:30 p. m. and 10:30 p. m. on Thursday and Saturday, and between 10 a. m. and 2 p. m. and between 3:30 p. m. and 6:30 p. m. on Saturday. The Commission's brief admits that the statement of the Commission above quoted was erroneous, but argues that the error was not prejudicial because there are many places in the record which accurately set forth the hours of operation proposed, and urges that all of these were before the Commission while it was deciding the case. But this is an argument which, if pressed to a not too remote logical conclusion, would disable the court from reversing an order of the Commission which was based on findings contrary to the evidence, if the evidence would justify other findings upon which the order could be upheld. The question is not whether a correct finding could have been made the basis for the same decision by the Commission, but whether the finding on which the decision was actually based was a correct one. And if the evidence in the record which accurately showed the proposed hours of operation had in fact been considered by the Commission, it seems extremely unlikely that the error in its statement would have occurred. In determining whether the public convenience, interest, or necessity would be served, proposed schedules of operation are an important factor. If, as we cannot but conclude in view of the statement, the Commission weighed the merits of the schedules proposed by the appellant and by the intervenors with an erroneous conception of those schedules, the error was prejudicial.

█ Further as to the hours of operation, the appellant asserts that the Commission erred in its finding that:

"It is considered that the needs of the area in and about Saginaw, Michigan, are such as to require that uninterrupted broadcast until local sunset, which is proposed by Messrs. Gross and Shields [the intervenors]."

This finding is not sufficiently specific to fulfil the requirements we have set forth above. It is an inference and does not set forth the facts from which the Commission drew it. Hence we cannot determine whether or not such facts are supported by the evidence. Even if we could consider the statement a proper finding, the evidence referred to by the Commission's brief as supporting it is irrelevant. The brief suggests that the evidence showed that there are seven stations serving Saginaw at night against three during the day; that the retail trade area about Saginaw is within a 25 or 50 mile radius; and that the daytime signal of the station proposed by the intervenors would cover more of this area than the daytime signal of the station proposed by the appellants. There is such evidence in the record, but it is difficult to see how it bears on the question of what hours of operation were best suited for the local programs proposed by both the appellant and the intervenors. It is undisputed that the seven stations presently serving Saginaw at night and the three serving it during the day are all outside stations, and that a station is needed in Saginaw only to present programs of local rather than outside interest. The ratio between the number of outside stations which may be heard at night and the number of outside stations which may be heard during the day seems to have no probative force to show that the daytime hours are best suited for local programs. Neither is the size of the trade area nor the extent to which the daytime signals of the proposed stations will cover that area relevant to that question. The statement as to hours of operation appears from the Commission's opinion to have been among the important considerations which influenced the Commission in its determination that the public convenience, interest, or necessity would be better served by granting the intervenors' application and denying that of the appellant. We think that the action of the Commission in reaching its determination upon such a conclusion unsupported by findings of fact and without relevant evidence was erroneous.

█ As to financial qualifications, the appellant urges as error the Commission's finding that "both applicants are possessed of the requisite . . . financial qualifications." The question of financial qualification has at least two aspects: first, has the applicant enough resources to construct

the station and to operate it for a brief period of time; and second, is there a reasonable likelihood of financial profit to be expected from the operation of the station, or are the applicant's personal resources such that he is able and willing to operate a station for a considerable period of time at a loss. The Commission's finding that the intervenors are financially qualified is an inference rather than a finding of fact, and does not disclose any facts bearing on either of the above aspects of the question of financial qualifications. Heitmeyer v. Federal Communications Commission, supra. The Commission did make findings as to the present resources of the intervenors, which we think are adequately supported by the record. The appellant urges, however, that the Commission erred in failing to find that a station operated as proposed by the intervenors would not receive sufficient commercial support to justify its operation. As to the likelihood of such commercial support the Commission said only that "It is anticipated that the monthly income expected to be derived from the station's operation would approximate $5,500." This statement can hardly be characterized as a finding as to the commercial support which the intervenors' station might fairly expect. It is not even coupled with a statement as to the monthly expenses of the proposed station from which by inference the conclusion could be drawn that the station would have a reasonable likelihood of operating at a profit. Even though there may be evidence in the record—upon this we do not pass—from which the Commission might have concluded that the intervenors would receive adequate commercial support in the sense above stated, this does not excuse the Commission from its duty of making a finding as the result of its consideration of that evidence. The language of Mr. Justice Butler in Atchison, T. & S. F. Ry. Co. v. United States, 295 U.S. 193, 55 S.Ct. 748, 79 L.Ed. 1382, that:

"This court will not search the record to ascertain whether, by use of what there may be found, general and ambiguous statements in the report intended to serve as findings may by construction be given a meaning sufficiently definite and certain to constitute a valid basis for the order. In the absence of a finding of essential basic facts, the order cannot be sustained." 295 U.S. 193, at pages 201, 202, 55 S.Ct. 748 at page 752, 79 L.Ed. 1382.

seems pertinent. It is not the duty of the court to make findings for the Commission and when the Commission has failed in its duty to make such findings, it is impossible for the court to review its conclusion. This too we regard as reversible error.

■■■ 4. The appellant also complains of several inaccuracies in the Commission's statement. One complaint refers to a statement by the Commission that the trial examiner recommended the denial of both applications. This statement is clearly incorrect. The record shows that the examiner recommended that the application of the appellant be granted. Another complaint of the appellant is that the Commission erroneously stated that the testimony of the appellant's engineer—as to the likelihood that the operation of the appellant's station would produce objectionable interference—was based upon actual field measurements covering eight hours distributed over three nights. This statement by the Commission is also clearly incorrect. The record shows that the measurements covered a period of seventeen hours distributed over nine nights; and even if only the measurements taken in the vicinity of Saginaw be considered, these, according to the record, occupied five nights. We do not say that these inaccuracies would alone be sufficient to reverse the Commission's order. But we call attention to them in passing in order to emphasize the necessity of careful consideration by the Commission of the evidence before it. This court, under the statute, does not have the function of passing upon the evidence in the sense of weighing it as to accuracy and credibility, but only in the sense of determining whether it substantially supports the findings. The function of weighing the evidence has been entrusted by Congress to the Commission, in order that technical controversies may be determined on the facts by a body of experts. But Congress intended that an applicant should have, and an applicant is entitled to have, careful consideration of the evidence which he has presented and the considered judgment of the Commission upon that evidence. Even though the inaccuracies alluded to may have been caused solely by inadvertence rather than by arbitrary or capricious action, they nevertheless show that the Commission's decision was not based upon that careful consideration of the evi-

dence which is properly to be expected from an unbiased body of experts discharging a function so important from the standpoint of both the parties and the public.

Reversed and remanded.