**ALLSTATE INSURANCE COMPANY,**
Petitioner,

v.

**STATE BOARD FOR PROPERTY AND CASUALTY RATES (formerly State Insurance Board), Respondent.**

No. 41390.

Supreme Court of Oklahoma.

Nov. 9, 1965.

Gene Stipe, Stipe, Gossett & Stipe, McAlester, for plaintiff in error.

Thomas M.¹ Wakely, Richard K. Race, Oklahoma City, for defendant in error.

BLACKBIRD, Justice.

This appeal is from an order of the State Insurance Board disapproving a filing of premium rates by Allstate Insurance Company (hereinafter referred to as "Allstate", the "company", or "appellant") for insurance policies sold in this State under the common name of "homeowners".

Subsequent to entry of said order on January 5, 1965, the Thirtieth Oklahoma Legislature enacted Senate Bill No. 156, effective July 1, 1965, abolishing the State Insurance Board and creating, in its stead, the State Board for Property and Casualty Rates, which has been substituted for the former Board as the defendant in error in this appeal.

Allstate's current homeowners premium rates in Oklahoma became effective after approval by the Board of their filing on October 17, 1962. These premium rates are 13 per cent higher than the premiums charged for insurance of similar character before that time, but they are unquestionably 10 or 15 per cent less than the premiums for corresponding forms of insurance coverage offered since that time by insurance companies that are members of the Oklahoma Inspection Bureau, or Inland Marine Insurance Bureau, or National Bureau of Casualty Underwriters, hereinafter referred to collectively as the "bureau".

After almost 2 years of insurance sales under said 1962 premium rate filing, Allstate, on November 2, 1964, received from the Board a letter requesting that it be furnished certain information as to its experience with homeowners policies covering the 5-year period of 1959 to 1963, both inclusive. Enclosed in this letter was a blank form for Allstate's use in furnishing the requested information; and it was stated in said letter that the request was being made "Pursuant to Section 1013 of the Insurance Code * * *". (Tit. 36 O.S. 1961).

After the Board received a letter from Allstate enclosing the above mentioned form filled out by said Company, the Board issued notice to Allstate of a hearing to be held in its hearing room in Oklahoma City, on December 9, 1964, for the purpose of determining whether said Company's homeowners rate " * * * meets the requirements of the Insurance Code."

The form, as filled out by Allstate, and introduced in evidence as "Exhibit A" at the scheduled hearing before the Board was (deleting the part representing Allstate's "countrywide" experience) in words and figures as follows:

"EXPERIENCE FOR HOMEOWNERS (Direct Basis)
(Latest available..5...years)

| OKLAHOMA | 1959 AMOUNT | 1959 % | 1960 AMOUNT | 1960 % | 1961 AMOUNT | 1961 % | 1962 AMOUNT | 1962 % | 1963 AMOUNT | 1963 % | Total All Years AMOUNT | Total All Years % |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Premiums Earned | 174,071 | 100.0 | 193,963 | 100.0 | 320,943 | 100.0 | 422,887 | 100.0 | 561,892 | 100.00 | 1,672,856 | 100.0 |
| 2. Losses Incurred | 27,844 | 16.0 | 409,112 | 210.9 | 216,900 | 67.8 | 238,711 | 56.4 | 380,166 | 67.7 | 1,272,733 | 76.1 |
| 3. Loss Adjustment Expense Incurred | 5,321 | 3.1 | 97,328 | 50.2 | 49,198 | 15.4 | 52,134 | 12.3 | 75,197 | 13.4 | 279,173 | 16.7 |
| 4. Loss & Loss Expenses Incurred (2 & #) | 33,165 | 19.1 | 506,440 | 261.1 | 266,093 | 83.2 | 290,845 | 68.7 | 455,363 | 81.1 | 1,551,906 | 92.8 |
| 5. Premiums Written | 195,993 | 100.0 | 251,606 | 100.0 | 368,770 | 100.0 | 482,293 | 100.0 | 652,961 | 100.0 | 1,951,623 | 100.0 |
| 6. Commission & Brokerage Incurred | 20,383 | 10.4 | 27,928 | 11.1 | 40,505 | 11.0 | 48,712 | 10.1 | 65,296 | 10.0 | 202,884 | 10.4 |
| 7. Other Acquisition, Field Supervision & Collection Expenses Incurred | 19,207 | 9.8 | 24,009 | 9.9 | 37,083 | 10.3 | 50,641 | 10.5 | 66,602 | 10.2 | 199,342 | 10.2 |
| 8. General Expenses Incurred | 9,800 | 5.0 | 13,335 | 5.3 | 20,282 | 5.5 | 25,079 | 5.2 | 31,342 | 4.8 | 99,838 | 5.1 |
| 9. Taxes, Licenses & Fees Incurred | 5,880 | 3.0 | 7,548 | 3.0 | 10,694 | 2.9 | 14,469 | 3.0 | 20,242 | 3.1 | 58,883 | 3.0 |
| 10. Total Expenses Paid (6, 7, 8, 9) | 55,270 | 28.2 | 73,720 | 29.3 | 109,524 | 29.7 | 138,901 | 28.8 | 183,482 | 28.1 | 560,897 | 28.7" |

In testimony given by a witness for Allstate in answer to questions propounded on behalf of the Board, it was admitted that on the basis of the above quoted figures shown on Exhibit A, Allstate had not "made money" on its homeowners policy business in Oklahoma, during the specified 5-year period. But, Allstate's position, as described at the hearing, was essentially that those figures did not, for more than one reason, constitute a credible, or accurate, criterion as to the adequacy of its premium rate schedule that had been approved in October, 1962, as aforesaid.

A part of Allstate's position was that, since its homeowners policy business in Oklahoma had constituted only about 4 per cent of all such business transacted by all insurance companies in Oklahoma during said 5-year period, the Board should determine the adequacy of its premiums for such policies on the basis of the ratio between said Company's "loss" items and its income-producing items in the homeowners business it had done during said period "country-wide", or in all of the United States, rather than solely on the basis of its Oklahoma business during said period. More importantly, for the purpose of this appeal, Allstate further contended that the figures on its Oklahoma business for the 5-year period do not constitute a credible basis for the Board's decision, because homeowners policies are customarily written for terms of 3 years, and the figures for the 5-year period included statistics on so many policies that were written and sold under the lower pre-October, 1962, premium rate, that they do not reflect the true ratio between income and expense items. Allstate's position was that unless the figures on Exhibit A were "adjusted" to the current premium rates, said exhibit furnished no basis for an accurate forecast as to whether or not an accounting period, dealing only with policies sold under the current premium rates, would show an operating profit, or a loss. For the purpose of obtaining such new information, the attorney representing the Board at the hearing, moved it to request "an exhibit showing this adjustment to the current rate level * * *".

From the record and the briefs in this case, we have been unable to positively ascertain whether or not the Board had the benefit of such evidence at the time it entered its order of January 5, 1965, disapproving said 1962-approved rates and directing that they not be in effect after February 28th of this year.

In connection with its present appeal from said order, Allstate applied to this court for a stay of its enforcement pending a decision on this appeal's merits. Said application was granted by order heretofore entered herein, which said order is superseded by this opinion.

Consideration of all the arguments advanced in the briefs filed herein would appear to expand the issues of this appeal beyond those we consider essential to its proper disposition. As we view the matter, predicate may be laid for deciding the essential issues herein by quoting certain findings and conclusions included in the Board's order of disapproval, as follows:

"* * *

"The Board having heard the testimony of the witnesses and having received the evidence admitted in the hearing hereby finds:

"1. That the actual homeowners loss experience of the Allstate Insurance Company in Oklahoma for the years 1959 through 1963 indicates an underwriting loss of $439,947.00, based on earned premium in the amount of $1,672,856.00, losses and loss adjustment expenses incurred of $1,551,906.00, and expenses of $560,897.00.

"2. That the actual countrywide loss experience of the Allstate Insurance Company for the years 1959 through 1963, indicates an underwriting profit of $8,690,946.00, based on earned premium in the amount of $104,133,993.00, losses and loss adjustment expense of $58,453,947.00, and expenses of $36,989,040.00.

"3. That the actual loss ratio was 92.8 per cent for Oklahoma and 56.2 per cent countrywide for the years 1959 through 1963, with an expense ratio of 28.7 per cent for Oklahoma and countrywide, resulting in an operating ratio of 121.5 per cent in Oklahoma and 84.9 per cent countrywide.

"4. That the Allstate Insurance Company has made several arithmetic adjustments for the purpose of estimating the prospective loss ratio by adjusting the earned premium in Oklahoma to the current rate levels, thereby indicating what the loss ratios for the prior years would have been had the company earned premium at the current rate rather than at the rate then in effect.

"5. The Allstate Insurance Company has submitted arithmetic adjustments for the purpose of indicating the prospective loss ratio by adjusting the earned premium to full bureau rates at the current rate level.

\* \* \* \* \* \*

"7. That the Allstate Insurance Company bases its rates upon the Oklahoma Inspection Bureau's loss indications, by using 'the same expectency of 60 per cent of each premium dollar for loss and loss adjustment expense.

"8. That, based on the assumption in finding No. 7 the Allstate Insurance Company contends that its present rate is not inadequate on the basis that its operating expense is lower than that of the Bureau.

"The Board on the basis of the findings above stated, \* \* \* hereby concludes: (The numbering opposite the following paragraphs has been added):

"\* \* \*

1. "That the fact that the Allstate Insurance Company projects that its present rate is adequate does not alter the fact that it has not made a profit in Oklahoma for the years 1959 through 1963.

2. "That the Board has control only over the rates in Oklahoma and must be primarily guided by the experience in Oklahoma.

3. "That, when a company seeks to justify a rate filing on the basis of lower operating expense, and uses the rating bureau's experience as a basis for its rates, then the company's actual loss ratio must approximate that of the bureau in order for there to be a conclusion showing that the operating ratio of the company is such that it is making a profit of sufficient amount to substantiate a rate lower than that of the bureau.

4. "That any homeowner rate which earns premium for a five year period at a resulting underwriting loss to the company is unreasonably low for the insurance provided.

5. "That the argument that the rates are not inadequate as long as the company is not financially impaired is untenable, the same as it would be if the Board was endeavoring to use it as a ground for denying a rate increase.

6. "That the continued use of a rate that has resulted in an underwriting loss to the company endangers the solvency of that company.

7. "That therefore, the above conclusions thereto applying, the rate in effect for the Allstate Insurance Company is not in compliance with the Insurance Code in that the rate is inadequate. \*. \* \*.'"

Under six propositions, Allstate, or appellant, urges reversal of the appellee Board's above quoted order. We think that consideration of some of the arguments advanced under its first one is sufficient to demonstrate that the order, in its present form, cannot stand. It will be noted from the last of the above quoted paragraphs of said order that the ground upon which the

Board disapproved appellant's premium rate filing was (as appellant states) its claimed inadequacy. As, according to appellant's undenied representation, homeowners policies are "multiple line premium contracts which include casualty coverage", we will assume that the rules set forth in Tit. 36 O.S.1961, sec. 1003, for adjudging premium rates, do not exclude application of the provisions of sec. 902, subd. A of said Title. And we agree with appellant that since the subject order contains no finding, or conclusion, that use of Allstate's rate endangers its solvency or has, or if continued will have, the effect of destroying competition or creating a monopoly" (902, subd. A), no such basis for the order should be considered. To do so, would countenance promulgation of orders not meeting the requirements set forth in the opinions this court promulgated in the two appeals styled Oklahoma Inspection Bureau et al. v. State Board for Property and Casualty Rates on September 28, 1965, 406 P.2d 453 to 460.

In attempting to answer appellant's contention that the subject order should be vacated because it contains neither of the findings or conclusions (concerning solvency and the destruction of competition) required by section 902, subd. A, supra, to be made in such an order, as a conjunctive, or complement, to finding that the rate is "unreasonably low", the only argument, possessing any merit or pertinency, advanced by appellee is that section 1003, supra, does not require such findings and conclusions; that a finding or conclusion of the rate's inadequacy (such as the subject order contains) is sufficient; and that said section, and particularly paragraph A, (3) thereof, shows that the Board has a broad discretion and wide range of factors it may consider in determining inadequacy. Appellee's position, in essence, is that it is neither required, nor practical, that such orders contain specific findings as to the variety of facts upon which its conclusion, or ruling, may have been based. In dealing with virtually the same subject in the first Oklahoma Inspection Bureau case, supra, this court said:

"The above mentioned statutes, * *, §§ 902 and 1003, provide that rates for insurance shall not be excessive, inadequate, or unfairly discriminatory. In addition to these general guides such statutes recite numerous factors to be considered in determining whether the rates fall within or without any of these classifications. Title 36 O.S.1961, § 3614, provides in part that a policy may contain additional provisions not inconsistent with the code and which are desired by the insurer and neither prohibited by law nor in conflict with any provisions required to be included therein. It is an inescapable conclusion that a determination of these matters in this highly complex area with fairness to both insurers and insureds is not simple. *It was the required function of the Board,* as a body experienced in this special field of insurance, *to make findings of fact supporting its conclusions and determination of such matters.*" (Emphasis added).

There, we said of the order involved in that case:

"The findings are insufficient because there was a failure to incorporate therein a proper and acceptable finding of the basic or underlying facts drawn from the evidence."

We think the same thing can be said of the order involved here. Careful analysis of the above quoted findings and conclusions contained therein, discloses no representation of facts which directly contradicts appellant's claims and evidence that its experience with homeowners policies, if the statistics thereon "are adjusted" to its present premium rates therefor, produces sufficient profit that said rates cannot be deemed inadequate, or unreasonably low. It will be seen that the only parts of the quoted order that might be said to inferentially dispute appellant's claims, employ purely abstract statements, and do not directly repre-

sent that use of *this* rate results in an underwriting, or any other kind, of loss, or that *this* rate's continued use endangers the solvency of the appellant company. The only evidence appearing to refer to the "arithmetic adjustments" mentioned in the above quoted findings numbered "4" and "5", that we have found in the record, is contained in the testimony of Mr. T. E. Dunavant, Assistant Secretary of appellant. This testimony appears contemplated to support appellant's position, rather than the Board's findings and/or conclusions contrariwise. While the paragraph herein designated as number "3" in the hereinbefore quoted conclusions of the Board may have been directed to Mr. Dunavant's computations, or "arithmetic adjustments", it constituted no affirmative showing of the order's correctness.

It is our conclusion that the findings in the order are deficient in that they fail to contain findings of basic or underlying facts drawn from the evidence which support and form a valid basis for the order. As a consequence there is furnished no basis for a judicial review of the order. A further hearing would present an opportunity for the Board to consider the evidence presently introduced and any evidence then produced, including later premium, loss and expense experience, and to make findings and conclusions in compliance with our opinions in the aforecited cases, and in such a way that " * * * the reviewing court can decide whether the decision reached * * * follows * * * from the facts stated as its basis, * * *." See Saginaw Broadcasting Co. v. Federal Communications Comm., 68 App.D.C. 282, 96 F.2d 554, 559, quoted in the first of those cases. The conclusions in such order should be based upon findings of relevant and specific facts (as distinguished from academic abstractions or veiled inferences).

As, on the basis of the foregoing, we have determined that the present order is deficient in the respects above referred to and contains insufficient findings, the same is hereby vacated, and this matter is remanded to the Board with directions to proceed in accord with the views herein expressed.