SHELPMAN *v.* EVANS PRODUCTS CO., PLYWALL DIVISION.

[No. 869A142.   Filed June 11, 1970. Rehearing denied September 9, 1970.
Transfer denied December 29, 1970.]

*Leonard E. Eilbacher, John R. Wilks, Hunt, Suedhoff & Wilks,* of Fort Wayne, for appellant.

*Ralph R. Blume, Nieter, Smith, Blume, Wyneken & Dixon,* of Fort Wayne, for appellee.

CARSON, J.—We here review a finding and denial of an award by the Full Industrial Board of Indiana upon appellant-George D. Shelpman's Form No. 9 Application for the adjustment of a claim for compensation.

On March 14, 1968, the Industrial Board approved a compensation agreement between the plaintiff-Shelpman and the defendant-Evans Products Company under the terms of which plaintiff was to receive $45 per week for a period of 130 weeks as compensation for a 65% permanent partial impairment of plaintiff's right arm below the elbow. On June 17, 1968, appellant filed his Form No. 9 Application setting out the injuries and alleging that at the time of the accidental injury he was under 18 years of age; was employed in violation of the Child Labor Laws of the State of Indiana; was permitted to do work in violation of said Child Labor Laws; and was, therefore, entitled to double compensation. On March 9, 1969, the first hearing was held before a single member of the Industrial Board. On May 2, 1969, the hearing member denied the adjustment sought by appellant. On May 7, 1969, appellant filed his Form No. 16 Application for the review by the Full Industrial Board of the action by the hearing member. On July 11, 1969, the Full Industrial Board, with one member dissenting, denied recovery to appellant, and found that at the time appellant-Shelpman was hired by appellee he represented to appellee that he was 18 years of age, and that appellant was not employed in violation of the Child Labor Laws of Indiana.

Appellant-Shelpman argues that the award of the Full Industrial Board is contrary to law for the reason that he was, in fact, under 18 years of age; that the employer had

a duty to ascertain his age at the time of employment in which duty appellee-corporation failed, and that such failure cannot be a defense to appellant's claim.

There is no dispute in the evidence as to the type of work which appellant was doing nor to the nature or extent of his injuries. The parties stipulated that appellant-Shelpman's birth certificate showed him to have been born on the 6th day of April, 1949, which, in fact, would have made him under 18 years of age at the time of his employment. The evidence shows that Shelpman filled out an application for employment with appellee-Evans Products, that said application was completed on the 10th day of June, 1966, and was signed by G. Douglas Shelpman. The application, which was admitted as defendant's Exhibit "A", shows the date of birth to be April 6, 1948, and that this fact was verified by a birth certificate. The entire application is in the handwriting of appellant-Shelpman. On redirect examination the uncontradicted testimony of Shelpman was that he was not required to show proof of birth when he applied for the job with appellee-Evans Products and that he was not required to bring a birth certificate with him nor was he required to take a physical examination.

Appellant's assignment of error is that the award of the Full Industrial Board is contrary to law. This assignment presents the full record for our review.

Morris. Willett, a witness for appellee, testified that he worked as Personnel Director for Manufacturing; that he hired applicants for employment and caused them to fill out an application form; that the application with respect to the employee in the instant case was filled out entirely by appellant-Shelpman except the bottom part which was to be filled out by the employer. Mr. Willett testified that it was not customary for him to hire 17-year old applicants and that he had strict instructions not to hire anyone under 18 years of age. He further testified that it was customary for

him to look at birth certificates of young people who came in for employment; and that the certification on the reverse side of the application was discussed with applicants wherein they attested that the information was true. The record does not show whether or not appellant-Shelpman was advised of the certification on the reverse side, although it does bear his signature.

Appellant-Shelpman argues that the Child Labor Laws are clear in their intent in that they designate certain occupations as unfit for minors, that the appellant was employed in precisely a job which was prohibited; that the Indiana Legislature has included the hazardous occupations in its laws by incorporating the same ones as are designated by the United States Department of Labor. Appellant further contends that appellee-Evans Products had a duty to ascertain the appellant's age and that said failure to do so cannot constitute a defense to the appellant's claim. These contentions under the assignment of errors filed present clearly the questions for our consideration.

Appellee contends that there is a conflict in the evidence. We do not agree with this contention. There is no conflict as to the manner in which the questions were answered on the application nor is there any conflict as to the actual date of appellant-Shelpman's birth as shown by his birth certificate, the nature of the work he was doing, and the nature and extent of his injuries.

The underlying question for our determination in this case is whether or not a legal duty existed requiring the appellee to determine appellant-Shelpman's age and, further, did the misrepresentations by Shelpman as contained on his job application constitute such misrepresentation as to be a bar to recovery by appellant-Shelpman.

We direct attention to the laws of the State of Indiana governing the employment of minors and defining the duty of employers. Particular attention is directed to the pertinent

portions of Ind. Stats. Ann., §§ 28-519, 28-523, Burns' 1948 Repl., as follows:

"28-519 (5466). Employment of minors—Proof of qualifications—Issuing officer.—It shall be unlawful for any person, firm or corporation to hire or employ or permit any minor between the ages of fourteen (14) and eighteen (18) years to work in any gainful occupation until such person, firm or corporation shall have secured and placed on file in the office of such person, firm or corporation a certificate issued by the issuing officer, as hereinafter defined, of the school corporation in which said minor resides. * * *

The issuing officer of such school corporation or the person authorized by him in writing so to act shall certificate only to a minor whose employment is necessary and not prohibited by law, and only upon receipt of the following four documents herein referred to as proof of age, proof of physical fitness, proof of schooling, and proof of prospective employment.

Proof of Age. The issuing officer shall require one of the following documents in the order named: (a) A birth certificate or duly attested transcript thereof issued by the registrar of vital statistics or other officer charged with the duty of recording births." * * *

"28-523 (6470). Minors under eighteen years—Prohibited occupations.—No minor under the age of eighteen (18) years shall be employed, permitted or suffered to work in any capacity in any of the following occupations: Oiling and cleaning, moving machinery; * * * "

The appellee argues that the finding by the Board against the appellant on all essential disputed questions was a finding against him (appellant) on the matters on which he had the burden of proof. In support of this contention appellee cites a number of Indiana cases which are opinions handed down by this court and are well-recognized.

Contrary to appellee's contention, the failure of the Board to make a finding as to the material issue of appellant's age does not give rise to a presumption that the Board made a finding that the appellant was 18 years of age. The rule of law relating to the Board's failure to find

upon a material issue was first stated by this court in *De-Armond* v. *Myers Gravel & Sand Corporation* (1967), 142 Ind. App. 462, 231 N. E. 2d 864, at 868-869, 12 Ind. Dec. 210 (Transfer denied), as follows:

"Some very important language defining the duty of an agency in discharging its responsibility in cases of the type before us, is found in the case of Saginaw Broadcasting Co. v. Federal Communications Commission (1938), 68 App. D.C. 282, 96 F. 2d 554 at page 559. The court pointed out that the process which an agency follows in reaching a decision: * * * necessarily includes at least four parts: (1) evidence must be taken and weighed, both as to its accuracy and credibility; (2) from attentive consideration of this evidence a determination of facts of a basic or underlying nature must be reached; (3) from these basic facts the ultimate facts, usually in the language of the statute, are to be inferred, or not, as the case may be; (4) from this finding the decision will follow by the application of the statutory criterion.

The distinction which the court so clearly made between 'basic facts' and 'ultimate facts' is the key to the matter, for as the court further put it:

'The requirement that courts, and commissions acting in a quasi-judicial capacity, shall make findings of fact, is a means provided by Congress for guaranteeing that cases shall be decided according to the evidence and the law, rather than arbitrarily or from extralegal considerations; and findings of fact serve the additional purpose, where provisions for review are made, of apprising the parties and the reviewing tribunal of the factual basis of the action of the court or commission, so that the parties and the reviewing tribunal may determine whether the case had been decided upon the evidence and the law or, on the contrary, upon arbitrary or extralegal considerations. When a decision is accompanied by findings of fact, the reviewing court can decide whether the decision reached by the court or commission follows as a matter of law from the facts stated as its basis, and also whether the facts so stated have any substantial support in the evidence. In the absence of findings of fact, the reviewing tribunal can determine neither of these things.' "

"Our Supreme Court, in the case of Cole v. Sheehan Constr. Co. (1944), 222 Ind. 274, 53 N. E. 2d 172, in

criticizing the Appellate Court for invading the province and the responsibility of the Industrial Board said at page 281, 53 N. E. 2d at page 175:

'The statute does not contemplate that the functions of the Industrial Board may be assumed by the courts. The better practice would appear to be to remand the proceeding to the Board with directions for it to discharge its statutory duty by finding the essential facts, and by entering an award based thereon. When that has been done any party feeling aggrieved may have a judicial review according to the established practice.' "

This Court subsequently followed the *DeArmond* statement of this rule in *Burton* v. *Rock Road Construction Co.* (1968), 142 Ind. App. 458, 235 N. E. 2d 210.

Appellant-Shelpman does not dispute the fact that he put a different date on his application than that which was actually on his birth certificate. Whether this was an inadvertent mistake or a deliberate misrepresentation does not appear from the evidence. Appellant-Shelpman, by his counsel, does refer us to several cases from other jurisdictions where exactly this same question was presented. We have examined those authorities to determine whether or not the law stated therein should be adopted as the law of the State of Indiana on the question presented by this case.

Our statute is specific in making the Workmen's Compensation Act the exclusive remedy for the injured employee. Acts of 1929, ch. 172, § 6, p. 536, Ind. Stat. Anno., § 40-1206, Burns' 1965 Repl. This is in contrast to some States which permit the injured employee to proceed under the common-law. The section of our statute which places the appellant in this case in the position of a covered employee under the Workmen's Compensation Act is set out in Acts of 1955, ch. 337, § 1, p. 1061, Ind. Stat. Anno., § 40-1701, paragraph (b), Burns' 1965 Repl.

The case law in Indiana interpreting the statutes with respect to the employment of minors was first set out in

*Inland Steel Co.* v. *Yedinak* (1909), 172 Ind. 423 starting at page 430, 87 N. E. 229, 139 Am. St. 389:

"Appellant is chargeable with knowledge of the legal dis-abilities of children to engage in its service, and must as-certain at its peril that a boy employed in the operations of its factory, which has been classified by the legislature as dangerous, is of the required age. * * * The employer of a child in violation of a specific statute cannot screen itself from liability for an injury sustained by the child in its service, because the injury was occasioned through such negligence, imprudence or childish traits as gave rise to the statute. It follows, therefore, that if appellee was employed and injured, as alleged in the second paragraph of complaint, under the law he cannot be chargeable either with having assumed any risks of the employment or with negligence contributing to his injury. (Citing authorities.)

\* \* \*

"The doctrine thus declared had reference to the rights of adults, and may be stated even more strongly when addressed to laws regulating the rights of minors to con-tract. The employment of children of tender years in mills and factories not only endangers their lives and limbs, but hinders and dwarfs their growth and develop-ment physically, mentally and morally. The State is vitally interested in its own preservation, and, looking to that end, must safeguard and protect the lives, persons, health and morals of its future citizens. Acting upon this wise and humane principle, nearly all, if not all, other states of the Union and most other enlightened governments of the world have enacted laws very simlar (sic) to our own, prohibiting the employment of young children in mines, factories and other establishments imperiling their health, lives and limbs, and at the same time affording them an opportunity to attend school, and to grow and develop in safe and wholesome surroundings free from the cares which generally engross the attention of adults in this commercial age.

\* \* \*

"Appellant's timekeeper testified that when appellee ap-plied for work he said he was over fourteen and under sixteen years of age, and thereupon was furnished a suit-able blank to be filled out so as to show his exact age, and be sworn to by his mother; that appellee returned this paper, subscribed and sworn to by his mother, showing

that he was born February 22, 1889, and he was then set to work. * * *

"Appellant was positively forbidden to employ him until he was fourteen years old, and was bound, at its peril, to know that while in its service he was not within the inhibited age. * * *

"The object of the law cannot be thwarted by the misstatement of a parent. A child seeking work, driven by necessity or the avarice of parents, might be expected to make any statement with respect to its age requisite to secure the desired employment. No such temptation to the child should be allowed, and no such premium on the perjury of the parent should be permitted, as a release of the employer from the obligations of the statute, upon a misstatement of the child's age would afford. In disposing of a similar contention the Supreme Court of Illinois, in the case of American Car, etc., Co. v. Armentraut (1905), 214 Ill. 509, 514, 73 N. E. 766, said: 'This doctrine is not applicable, for the reason that the statute under consideration is aimed at the master and not at the servant. The act of the child in accepting or entering into the employment is not unlawful. Moreover, if the child's statement to the effect that he was above the age of sixteen would constitute a defense, the law could never be enforced in any case where the child was willing to make a false statement in reference to his age for the purpose of obtaining employment. * * * ' "

(Emphasis supplied.)

Historically there are many cases holding that a minor illegally employed as a result of misrepresentation of age, who was then injured in a prohibited employment, was not barred from his right to recover for such injuries.

It has been held that he might proceed under the compensation laws in an appropriate case, or he might, as an employee of a railroad, proceed under the Federal Employers' Liability Act. These cases are annotated in 136 A.L.R. 1124.

A further complete annotation holding that misrepresentation of age by a minor is no defense available to the employer where the record shows that the employer completely failed to comply with the laws of the jurisdiction relative to employ-

ment of minors is fully set out in 142 A.L.R. starting at page 1029.

We feel compelled to briefly review the economic and social changes which brought the passage of child labor legislation. In the pre-industrial revolution era child labor was used in the apprentice system where the child was bound out by its parents and the wages were paid directly to the parents. The exploitation of child labor came about, both in England and in this country, as part of the industrial revolution. In the early development of mining and industry child labor supplied a source of cheap labor. This labor was drawn from a segment of society where many members of the family were required to work and contribute to the cost of maintaining the family. The use of child labor was probably more abusive than slave labor since the employer had no paternal interest in either the child or its family. The child labor laws and the early cases supporting those laws were a reflection of the rebellion of society against this abuse and exploitation. In fact, the cases do not support the legislation and its enforcement for economic reasons but solely on the basis of the police power of the state in the protection of its adolescent citizens. The case of *Inland Steel Co.* v. *Yedinak, supra,* illustrates the extent to which parents would go in securing employment for minor children.

We feel that the need for legislation which placed the full responsibility upon the employer for obedience to the law and made the employer almost a criminal per se for violation of the law no longer exists and should not be carried to the extreme necessary to reverse this case. We are bound, however, by judicial precedent and by the clear and unambiguous language of our laws as passed by the Legislature. In reversing the case we are merely giving effect to the doctrine in the *Yedinak* case and normal construction to the specific language of the Legislature of the State of Indiana. While disagreeing with this position, we cannot do otherwise without placing ourselves in the position of the Legislature and

amending the law by judicial fiat. Both the Supreme Court and this court have repeatedly held that we will not do this. Legislation changing public policy as established by judicial decision or prior legislative acts must be accomplished by legislative action. That branch of government represents the sentiment of the people and has the responsibility of expressing that sentiment by its considered action in passing new legislation or amending existing legislation which grew out of social conditions of a different era.

In the recent case of *Town of Kewanna etc.* v. *Indiana Employment Securities Board* (1960), 131 Ind. App. 400, 171 N. E. 2d 262, the court stated:

"Furthermore, we conclude that in the interpretation of statutes and their meaning, it is imperative that the interpreter does not twist words so as to express what he concludes should have been expressed, also, when a statute is clear and unambiguous, a court has an imperative duty not to substitute or change its meaning."

We hold, therefore, that the misrepresentation by the appellant as to his true age is not a defense available to the employer; that the laws of the State of Indiana make it the duty of the employer to determine the true age of the prospective employee; that the true age of the employee in this case made his employment in the particular type of work he was doing a violation of the Child Labor Laws; that he was entitled, therefore, to double compensation under the Workmen's Compensation Laws of the State of Indiana.

This cause is, therefore, remanded to the Industrial Board of Indiana with instructions to enter findings consistent with this opinion and to make an award on such findings of double compensation, allowing credit to the appellee for that compensation already paid.

Remanded with instructions. Costs taxed to appellee.

Lowdermilk, C.J., Cooper and Sullivan, JJ., concur.

NOTE.—Reported in 258 N. E. 2d 868.